Carmen MARQUEZ et al., Plaintiffs, Appellants,

v.

Margarita AVILES, Defendant, Appellee.

No. 5250.

United States Court of Appeals First Circuit.

Feb. 25, 1958.

Rehearing Denied March 10, 1958.

Bolívar Pagán, San Juan, P. R., for appellants.

Enrique Cordova Díaz, San Juan, P. R., with whom Manuel A. García Méndez and Manuel A. García Hermida Aqudilla, P. R., were on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

Appellants herein are seven persons all born between the period 1928–1940 as illegitimate children of an adulterous union between Bonifacio Aviles Perez and Narcisa Marquez. Appellee is the legitimate daughter of Bonifacio Aviles Perez and his wife Josefa Cruz Barreto, and is at present the sole and universal heir of Bonifacio Aviles Perez, who died in Puerto Rico in 1954; that is, appellee is the sole universal heir, if appellants are not also lawful heirs of Bonifacio Aviles Perez, entitled to share in his hereditary estate.

A civil action for filiation was filed by appellants as plaintiffs in the Superior Court of Puerto Rico, Aguadilla Part, in which these illegitimate children sought a court decree declaring that the plaintiffs are the children of Bonifacio Aviles Perez, deceased, with hereditary rights over the properties left at his death.

On November 12, 1954, the Superior Court entered judgment dismissing the complaint in toto, although by Act No. 243, approved May 12, 1945, Laws of Puerto Rico 1945, p. 814, the plaintiffs, as children in fact of Bonifacio Aviles Perez, were entitled to a declaration that they were to be considered "as natural children for the sole purpose of bearing the surname of their parents". See Cruz v. Andrini, 66 P.R.R. 119 (1946); Fernandez v. Heirs of Fernandez, 66 P.R.R. 831 (1947). Accordingly, on appeal, the Supreme Court of Puerto Rico on September 6, 1955, reversed the judgment of the Superior Court and remanded the case to that court for further proceedings.

After such further proceedings in the Superior Court, that court on May 10, 1956, entered judgment declaring that the seven plaintiffs are the "acknowledged illegitimate children of Bonifacio Aviles, with all the rights belonging to said children as such, including the right to inherit [from] his father in a share equal to that of his legitimate daughter mentioned above, in the properties left by him at his death." Upon a second appeal of the case, the Supreme Court of Puerto Rico on March 29, 1957, entered judgment modifying the judgment of the Superior Court so as to declare merely that the seven plaintiffs "are all natural children of Bonifacio Aviles-Perez, for the sole purpose of bearing their father's surname," and as thus modified the judgment below was affirmed. Thus, as appears from an accompanying per curiam opinion by the Supreme Court of Puerto Rico, that court in effect struck from the judgment of the Superior Court the important provision declaring that the plaintiffs are heirs of Bonifacio Aviles Perez, entitled to share in his hereditary estate. From that judgment of the Supreme Court of Puerto Rico the seven original plaintiffs took the present appeal to this court.

Our jurisdiction of this appeal is based on 28 U.S.C. § 1293. Appellants seek to raise certain federal questions of due process of law and of equal protection of

the laws. They also seek to raise certain questions of insular local law, as to which they say the judgment of the Supreme Court of Puerto Rico was "inescapably wrong".

■ This appeal is patently frivolous in so far as it seeks to torture the questions presented into federal constitutional questions. We have hitherto found it unnecessary to determine whether we should apply to Puerto Rico the due process clause of the Fifth Amendment or of the Fourteenth Amendment since July 25, 1952, when the status of Puerto Rico was changed to that of a commonwealth under the American flag. See Mora v. Mejias, 1 Cir., 1953, 206 F.2d 377, 382. Nor do we have to decide that question now. Appellants' due process argument assumes in their favor the very point of local law at issue, namely, whether under the law of Puerto Rico appellants have the legal status of heirs, entitled to share in the hereditary estates of Bonifacio Aviles Perez. Making that assumption, appellants say that they have a property right, of which they have been deprived by the Commonwealth of Puerto Rico acting through its judicial branch. But if that assumption is found to be incorrect, as a matter of local law, the appellants have obviously not been deprived of any property right without due process of law. Of course "due process of law does not mean infallible process of law", as Learned Hand, J., observed in Schechtman v. Foster, 2 Cir., 1949, 172 F.2d 339, 341. It all gets back, then, to a question of local law as to what are the legal rights of appellants as illegitimate children of an adulterous union.

■ As to equal protection of the laws, this court had the following to say in Stagg, Mather & Hough v. Descartes, 1 Cir., 1957, 244 F.2d 578, 583:

"It is true that this court in due process cases has not yet found it necessary to decide whether the Fifth or the Fourteenth Amendment applies in Puerto Rico, and the Fifth Amendment, unlike the Fourteenth, has no equal protection clause. But Fifth Amendment due process cov-

ers at least some denials of equal protection, for the Supreme Court in Bolling v. Sharpe, 1954, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884, after pointing out that both concepts stem from the American idea of fairness said:

" 'The "equal protection of the laws" is a more explicit safeguard of prohibited unfairness than "due process of law," and, therefore, we do not imply that the two are always interchangeable phrases. But, as this Court has recognized, discrimination may be so unjustifiable as to be violative of due process.' "

In any event, it is manifestly impossible to make out a case of denial of equal protection of the laws here, for, as we held in Everlasting Development Corp. v. Sol Luis Descartes, 1 Cir., 1951, 192 F.2d 1, 7, certiorari denied, 1952, 342 U.S. 954, 72 S.Ct. 626, 96 L.Ed. 709: "There must be a purposeful discrimination against one person and in favor of another person in like case, with no rational basis for a differentiation between the two." Appellants founded their claim of legal right upon a provision of § 1 of the Bill of Rights of the Commonwealth Constitution, which became operative July 25, 1952, 48 U.S.C.A. § 731d note and upon Act No. 17 of August 20, 1952, Laws of Puerto Rico, Spec.Sess.1952, p. 200, an act passed to implement the rights granted in the Commonwealth Constitution. The Supreme Court of Puerto Rico rejected this contention on the ground that all of the appellants were born prior to July 25, 1952. In this respect the court was merely applying to appellants the same rule of non-retroactivity which it had already applied to other persons born prior to the establishment of the Commonwealth, in Alvarez v. Alvarez, 77 P.R.R. 862 (1955), and in Sanchez v. Diaz, 78 P.R.R. 771 (1955). There has been no discrimination, "purposeful" or otherwise, between appellants and other persons "in like case".

■■ There remains for consideration only the question of the correctness

of the ruling of the Supreme Court of Puerto Rico as a matter of local law.

In Figueroa v. People of Puerto Rico, 1 Cir., 1956, 232 F.2d 615, 618, without deciding the point, we suggested the possibility that, when the Congress passed its joint resolution approving the constitution of the Commonwealth, 66 Stat. 327, which constitution in § 3 of Art. V provided that the Supreme Court of Puerto Rico "shall be the court of last resort in Puerto Rico", the Congress might be deemed to have thereby impliedly withdrawn from the Court of Appeals for the First Circuit "this anomalous vestige of federal jurisdiction over local law questions" as provided in 28 U.S.C. § 1293, with the gloss put upon that provision by De Castro v. Board of Commissioners, 1944, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384, and cases cited therein. Though our technical jurisdiction to review local law questions has not been challenged in the present case, we are aware, of course, of the statement frequently made that a court sua sponte must always take note of its own lack of jurisdiction. If we were inclined to reverse the Supreme Court of Puerto Rico upon a determination that its decision of a local law question was "inescapably wrong", we would certainly have to determine of our own motion whether we had any jurisdiction in the premises before we exercised such appellate power of reversal. But where, as in the present case, we are so clearly of opinion that the decision of the Supreme Court of Puerto Rico on a point of local law must be sustained, we are inclined, in the absence of challenge, to assume that our vestigial jurisdiction remains unimpaired, however much technical niceties might suggest that we ought not to make that assumption.

When Puerto Rico in 1952 became a commonwealth, under its own constitution, that change of status certainly reinforced and intensified the reasons of policy which led the Supreme Court, in De Castro v. Board of Commissioners, supra, to adhere to the self-denying ruling

under which appellate federal courts were told that they ought not to reverse a judgment of the Supreme Court of Puerto Rico on a question of local law unless that judgment was deemed to be "inescapably wrong" or "patently erroneous".

It is difficult to imagine a matter of more exclusively local concern than the question of the right of illegitimate children to inherit property of a deceased resident of Puerto Rico. This has been a matter of constant insular preoccupation, tracing back to Spanish sources. It is a subject which has been full of perplexities and technicalities, as a casual reading of the innumerable decisions of the Supreme Court of Puerto Rico will attest.

As previously stated, appellants have based their case upon a provision of the Commonwealth Constitution which came into effect on July 25, 1952, and upon a legislative act passed later the same year to implement that constitutional provision.

Section 1 of Art. II of the Puerto Rican Constitution contains a general declaration, as follows:

"The dignity of the human being is inviolable. All men are equal before the law. No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas. Both the laws and the system of public education shall embody these principles of essential human equality."

In conformity with the last sentence of the above constitutional provision, the legislature of Puerto Rico, in order to implement this declaration of equal rights, passed Act No. 17, approved August 20, 1952 (Laws of Puerto Rico, Spec.Sess. 1952, p. 200) reading:

"Section 1. All children have, with respect to their parents and to the estate left by the latter, the same rights that correspond to legitimate children.

"Section 2. The provisions of this Act shall have retroactive effect to July 25, 1952."

It is to be noted that the general declaration of equal rights contained in § 1 of Art. II is silent on the question of its applicability retroactively to affect the status of persons born before the constitution came into effect. The Supreme Court of Puerto Rico declined to read the section in a vacuum, but recognized that its provisions were the final culmination of a long history of legislative changes in Puerto Rico.

Subject, of course, to the power of the legislature to change the rules retroactively, the Supreme Court of Puerto Rico has frequently noted that filiation rights of an illegitimate child are governed by the statutes in force at the date of the birth of such illegitimate child. See Charres v. Arroyo, 16 P.R.R. 777 (1910); Mendez v. Martinez, 21 P.R.R. 238, 252, 256 (1914); Morales v. Heirs of Cerame, 30 P.R.R. 784 (1922); Mercado v. Heirs of Mangual, 35 P.R.R. 388 (1926); Silva v. Doe, 75 P.R.R. 198, 207 (1953); Sanchez v. Diaz, 78 P.R.R. 771, 776 (1955).

For present purposes we need not go further back than the Act of March 9, 1911. Laws of Puerto Rico 1911, p. 234. That Act inserted §§ 193–197 into the old Civil Code so as to introduce a distinction between illegitimate children of an adulterous union, and "natural children", defined as "those born out of wedlock, from parents who, at the moment when such children were conceived or were born could have intermarried with or without dispensation." Only "natural children", as defined, were given the capacity, by subsequent "recognition", to achieve the status of heir, entitled to share in the hereditary estate of their father. That distinction was carried over without change into §§ 125–129 of the Civil Code, as revised in 1930.

The next important change occurred in the enactment of Act No. 229, approved May 12, 1942, which provided, in part, as follows:

"Section 1. All children born out of wedlock subsequent to the date this Act takes effect, shall be natural children, whether or not the parents could have married at the moment when such children were conceived. These children will be legitimized by the subsequent marriage of the parents, to each other.

"Section 2. Children born out of wedlock prior to the date this Act takes effect, and who lack the qualifications of natural children according to previous legislation, may be recognized for all legal purposes by the voluntary action of their parents, and in their default, by that of the persons having the right to inherit therefrom. These children will be legitimized by the subsequent marriage of the parents, to each other."

Thus, as to children born out of wedlock subsequent to May 12, 1942, § 1 of Act No. 229 enlarged the definition of "natural children" so as to remove the barrier of adultery which theretofore had prevented subsequent acknowledgment for all legal purposes. Section 2 of the same Act did retroactively change the law applicable to a so-called "adulterine", born prior to May 12, 1942, so as to permit such a child to be acknowledged, for all legal purposes, by the "voluntary action" of the father, or in default thereof by the persons having the right to inherit from him; but it has long been settled that the "voluntary action" referred to must appear by a recordation, a will, or other public instrument. See Correa v. Heirs of Piza, 64 P.R.R. 938 (1945); Cruz v. Andrini, 66 P.R.R. 119, 121–22 (1946). It is not claimed by appellants that there was ever any such acknowledgment by "voluntary action" in the case at bar. Thus it is clear that if the inheritance rights of appellants are governed by the statute law in force at the date of their respective births (1928–1940), they are not entitled as heirs to share in the hereditary estate of their father, Bonifacio Aviles Perez.

We have already referred to Act No. 243, approved May 12, 1945, Laws of Puerto Rico 1945, p. 814. That Act amended § 2 of Act No. 229, approved

May 12, 1942, so as to add a paragraph providing that "adulterine" children born out of wedlock prior to May 12, 1942, who had not been recognized by the "voluntary action" referred to, should nevertheless "be considered as natural children for the sole purpose of bearing the surname of their parents. The action for this recognition shall be prosecuted in accordance with the procedure fixed by the Civil Code of Puerto Rico for the recognition of natural children; *It being understood, however,* That such a recognition shall only have the scope herein expressed."

This brings us to the general declaration of equal rights contained in the Bill of Rights of the Puerto Rican Constitution, above referred to. Was this declaration intended to be prospective only, or was it intended to apply retroactively to enlarge the inheritance rights of persons born before the constitution came into effect? As above noted, § 1 of Art. II of the constitution was silent in this respect. Accordingly, the Supreme Court of Puerto Rico felt obliged to examine into the history of the adoption of this provision by the constitutional convention. In this respect, in the per curiam opinion in this case, the Supreme Court of Puerto Rico had the following to say:

"In the Report of the Committee of the Bill of Rights and in the debates of the Constitutional Convention it was clearly indicated that 'for the purposes of inheritance and property, the changes resulting from this section (referring to § 1 of the Bill of Rights) *shall not be retroactive to births occurring prior to its effectiveness.*' See Diario de Sesiones, Procedimientos y Debates de la Convencion Constituyente de Puerto Rico, pp. 520–525."

Consequently, the Supreme Court of Puerto Rico concluded that appellants could only be "considered as natural children for the purpose of bearing their father's surname, since they were at no time acknowledged by the voluntary action of their father nor by that of the persons entitled to inherit from Bonifacio Aviles-Perez." In thus construing a provision of their local constitution, the Supreme Court of Puerto Rico was only adhering to a construction which it had already made in similar cases, in Alvarez v. Alvarez, 77 P.R.R. 862 (1955), and in Sanchez v. Diaz, 78 P.R.R. 771 (1955).

The action of the legislature of Puerto Rico in passing the implementing Act No. 17, approved August 20, 1952, was entirely consistent with this construction given the constitutional provision, for § 2 of Act No. 17 expressly provided that the provisions of this Act "shall have retroactive effect to July 25, 1952", the date on which the constitution became effective.

We mention briefly one point raised by appellants which the Supreme Court of Puerto Rico evidently did not consider of sufficient merit to comment upon. Appellants refer to the provision of § 687 of the Civil Code of Puerto Rico reading: "In order to determine the qualification of the heir or legatee, the time of the death of the person whose succession is in question shall be taken into consideration." They then point out that Bonifacio Aviles Perez did not die until 1954. But it is quite apparent from an inspection of the text, especially the second paragraph of § 687, that that section refers only to the preceding § 685, which prescribes the cases in which a person, admittedly an heir, may be disqualified from taking property by inheritance. As to the circumstances under which an illegitimate child may by recognition acquire the status of an heir, we have to look to the earlier sections of the Code.

All in all, it is obvious that we could not possibly hold the judgment of the Supreme Court of Puerto Rico to be "inescapably wrong" or "patently erroneous" in declaring the local law to be as above indicated.

A judgment will be entered affirming the judgment of the Supreme Court of Puerto Rico.