AB INTESTATO OF CLARA VÉLEZ, EX PARTE; MANUEL ACOSTA VÉLEZ ET AL., Petitioners, JOSÉ VILLAMIL DÍAZ ET AL., Oppositors and Respondents.

No. 12036. Submitted March 3, 1959.—Decided January 28, 1960.

*José Sabater* and *Eudaldo Báez García* for petitioners. *E. Alcaraz Casablanca* for oppositors and respondents. *Isaías Fuentes* for Santiago Villamil and *Luis Ángel Limeres, Assistant Fiscal* for Roberto Villamil.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

José Villamil Vélez, legitimate son of Pedro Villamil and Clara Vélez, died in Mayagüez, Puerto Rico, on July 14, 1938.

By order of January 20, 1939 of the former District Court of Mayagüez, the following were designated as sole and universal heirs of the deceased José Villamil Vélez: his mother Clara Vélez and his four recognized natural children, José Villamil, Santiago Villamil Valentín, José Rafael Villamil and Roberto Villamil.[1]

At Clara Vélez' request the judicial administration of the property left by her legitimate son José Villamil Vélez, which was valued at $22,400, was decreed.

Three-fourths of the hereditary estate belonged to Clara Vélez, as legitimate mother of the predecessor[2] and she acquired the other fourth by purchase from her four natural grandchildren for the price of $2,000, which she paid to each one of them, Clara Vélez thus becoming the sole owner of all the property left at the death of her legitimate son José Villamil Vélez.

About fourteen years later, that is, on January 20, 1952, Clara Vélez died intestate in the city of Mayagüez. By order of February 17, 1953 the Superior Court, Mayagüez Part, designated sole and universal heirs of Clara Vélez her children Manuel Acosta Vélez and Carmen Vélez, also known as Carmen Acosta Vélez and her natural grandchildren José Villamil Díaz, Santiago Villamil Valentín, José Rafael Villamil and Roberto Villamil in representation of her deceased son José Villamil Vélez.

---

[1] The deceased José Villamil Vélez had executed an open will in which he designated as his sole heirs, share and share alike, his mother Clara Vélez and his natural son José Villamil. However, the declaration of heirship was made because after the will was executed and after the death of the testator three natural children of said testator, named José Rafael, Roberto and Santiago Villamil, were acknowledged.

[2] In this appeal the proportion of the hereditary share which belonged and was awarded to Clara Vélez is not in issue.

The judicial administration of the property left by Clara Vélez was decreed and within said proceeding a commissioner in partition was appointed, who prepared and filed a bill of partition, dividing the estate in three parts, to wit: one-third for the heir Manuel Acosta Vélez; another third for the heiress Carmen Acosta Vélez, as children of the deceased, and the remaining third in equal parts among the four natural grandchildren, José Villamil Díaz, José Rafael Villamil, Santiago Villamil Valentín and Roberto Villamil Carrero.

The heirs José Villamil Díaz and José Rafael Villamil challenged the said bill of partition alleging that the real property which formed part of Clara Vélez' estate, and which was divided among all her heirs, was to be reserved in favor of the heirs who are the children of José Villamil Vélez, since the deceased Clara Vélez acquired that property by inheritance from her said son José Villamil Vélez.

After dismissing the challenge and approving the partition in the manner prepared by the commissioner in partition, the lower court reconsidered its order, granted a new hearing to the oppositors and finally entered an order sustaining the challenge and ordering the commissioner in partition to prepare a new bill of partition. The dispositive part of said order reads:

"Wherefore the court sustains the challenge to the partition made by petitioners José Villamil Díaz and José Rafael Villamil and sets aside the judgment entered by this court on December 27, 1955 approving the report of the commissioner in partition; it designates the property acquired by Clara Vélez by intestate inheritance from her son José Villamil Vélez, as property to be reserved in favor of the children of said José Villamil Vélez, and consequently, orders the commissioner in partition to execute a new partition pursuant to the following instructions:

"All the property acquired by Clara Vélez Gordon by inheritance from her son José Villamil Vélez shall be awarded to the latter's descendants, namely, José Villamil Díaz, José Rafael Villamil, Santiago Villamil and Roberto Villamil, except the

proportional part of that property the value of which at the time of its partition on the death of José Villamil Vélez was approximately $8,000, which was the amount paid by Clara Vélez Gordon to the remainder of José Villamil Vélez' heirs for their hereditary share" (T. R. at 79 and 80.)

From said order the heirs Manuel Acosta and Carmen Acosta, children of the predecessor Clara Vélez appealed and assigned the commission of the following errors:

"I. The lower court erred in deciding that pursuant to § 924 of the Civil Code the property inherited by the legitimate mother Clara Vélez from her son José Villamil Vélez was reservable, without taking into account the nonexistence or the cessation or extinction of the reservation if any.

"II. The lower court erred in deciding that the ascendant Clara Vélez was bound to reserve, even without remarrying, because during her widowhood she had an acknowledged illegitimate son.

"III. The lower court erred in deciding that the natural children of the son of her only marriage are entitled, as reservees, to the property allegedly reserved, excluding Clara Vélez' own children from her estate.

"IV. The lower court erred in failing to decide that Clara Vélez as legitimate mother of her son José Villamil Vélez, was entitled to inherit from her deceased son, with or without a will; and that she was entitled and could acquire by means of payment in cash, as she did with the court's approval, the hereditary rights of her natural grandchildren, free from any obligation to reserve said property." (The appellants' brief, pp. 13 and 14, first piece.)

Upon entering the order now under review the judge of the lower court stated:

"Actually the only problem presented in this case is whether the provisions of § 923 only establish the right of reservation in favor of legitimate children, or if on the contrary, they favor natural children also, such as petitioners in this case. Section 923 establishes the right of reservation in favor of the children and descendants of the first marriage, which is tantamount, according to § 924, to the children and descendants of the legitimate child from whom the property is inherited."

We agree that that is the fundamental question involved herein.

Let us see now whether the lower court decided correctly in upholding the right of reservation in favor of the natural grandchildren.

In support of its theory the lower court cites a commentary by Scaevola (17 Scaevola, *Código Civil* (1900 ed.), 160), where said commentator criticizes the institution of reservation insofar as it is established in favor of legitimate descent and therefore, excludes the natural children.

Accepting the reasons set forth by Scaevola in his criticism, the trial judge concludes that that view must prevail in our jurisdiction "especially if we consider that at present the rights of the natural children in Puerto Rico have been equalized to the rights of legitimate children. Both are forced heirs of their parents with equal hereditary rights and we see no logical reason whatever on which to base the contention that among the 'descendants' mentioned in § 924 of the Civil Code the recognized natural children are not included."

Section 923 of the Civil Code in force (31 L.P.R.A. § 2731) provides:

"The widower or widow contracting a second marriage shall be obliged to set apart for the children and descendants of the former the ownership of all the property he may have acquired from the deceased spouse by will, by intestate succession, by gift, or for any other good consideration, but not his or her half of the conjugal profits."

The provision of the preceding section is applicable to property which has been acquired for the considerations mentioned therein by the widower or widow from any of the children of their first marriage. Section 924 of the Civil Code (31 L.P.R.A. § 2732).

The widow Clara Méndez did not contract a second marriage but it is a fact that during her widowhood she subsequently had recognized natural children. Therefore the

obligation to reserve is imposed upon her by § 935 of the same Code (31 L.P.R.A. § 2743) which provides:

"The obligation to set apart, imposed in the preceding sections, shall be applicable to the widower or widow, who, even though he or she does not contract a new marriage, may subsequently have an acknowledged natural child, or one judicially declared as such."

But in order to have the obligation to reserve which is imposed upon the twice-married spouse or upon the widower or widow who subsequently has a recognized illegitimate child, there must exist, at the death of the person who reserves the property, such reservees as are mentioned in the Code itself. Section 923 establishes the reservation in favor of the *children and descendants of the first marriage.* If we were to interpret this section isolatedly, we could conclude, as did the lower court, that when the Code referred to the *children and descendants* without specifying their nature, the recognized illegitimate children would be included among the reservees *as descendants* of the children of the first marriage; but § 923 must be interpreted jointly with all the sections of the Code governing the subject of reservation. Thus we see that in establishing the cases wherein the obligation to reserve ceases, § 925 [31 L.P.R.A. § 2733] provides: "The obligation to set apart shall cease when *the children of a marriage,* of age and who may have a right to the estate, should expressly renounce it, or when things given or left by the children to their father or mother, with a knowledge that they had married a second time, are in question." (Italics ours.) This section mentions the waiver made by the *children of a marriage,* which necessarily implies that it refers to the waiver made by the legitimate children. It could be argued that the section does not make reference to the descendants of the children of a marriage, that is, to the descendants of the legitimate children, but the following section, 926, [31 L.P.R.A. § 2734] dispels any doubt as to

the nature of the descendant in whose favor the property is reserved. Said section provides:

"The reservation shall also cease if on the death of the father or mother who contracted a second marriage no *legitimate children* or *descendants* of the first marriage survive." (Italics ours.)

In accordance with this provision if on the death of the person reserving the property no legitimate children or descendants of the first marriage survive, the obligation to reserve ceases. The reason is that in such case there are no reservees because the latter must be legitimate children of the first marriage or legitimate descendants of said children.

Since José Villamil Vélez died in 1938 leaving only natural descendants, on the death of his mother Clara Vélez in January 1950, no legitimate children or descendants of Clara Vélez' first marriage survived and therefore, pursuant to the provisions of said § 926, the obligation to reserve ceased.

The Code authorizes the father or mother, married a second time, to better in the reservable property any of the *children or descendants* of the first marriage. Section 927 [31 L.P.R.A. § 2735]. It may be observed that this section uses the same language as § 923 when the latter refers to the descendants in whose favor the obligation to reserve is established, that is, to the *children and descendants* of the first marriage. However, § 928 [31 L.P.R.A. § 2736] which establishes the rule for succession to the property to be reserved when the father or mother should not have made use in whole or in part of the right to better any of the children or descendants of the first marriage, provides that in such case, "*the legitimate children and descendants* of the first marriage shall succeed to the property to be set apart in accordance with the rules prescribed for succession in the descending line, . . ." Lastly § 930 [31 L.P.R.A. § 2738] provides:

"Alienations of real property to be set apart, which may have been made by the widower or widow after contracting a second marriage, shall be valid only if on his or her death no *legitimate children or descendants* of the first marriage survive, without prejudice to the provisions of the Mortgage Law, Title 30." (Italics ours.)

The language used in the Code in all the sections governing the institution of the reservation, does not permit the interpretation of § 923 in the manner made by the trial judge. We believe that the question is not even doubtful. That the legislator wanted to establish the obligation to set apart in favor of the legitimate descending line only, becomes evident from the very language used in the sections to which we have been referring.

The commentators of our Civil Code and of the Spanish Civil Code hold the same view.

Scævola, after criticizing the framers of the Spanish Civil Code for having failed to include the natural children among the reservees, concludes: "We are not in favor, however, of maintaining the origin of the reservation in favor of the natural children, in view of the preciseness of the Code in all the subdivisions of this section. Reference is constantly made to the *widower* or *widow*, and likewise to the reservation in favor of the children of the first *marriage.* Where there is no marriage, and, consequently, no widower or widow, the principles of law, the rules of sound criticism and common sense may be and are certainly applied, but not the necessary force of law. An error of expression of the legislators can not even be suggested; the text is clear, and is likewise in harmony with the former doctrine followed to the letter on this point; final proof that the framers of the Code knew what they were saying." (17 Scævola, *Código Civil*, (5th ed.), 189.)

And referring to the natural grandchildren Scævola in the same text and volume cited, comments on page 190, that

the Code decides the question with the final declaration contained in § 971, equivalent to our § 926. Said commentator states:

"Another interesting question could have been presented in the old law and could have been better presented in the Code if the latter had not gone ahead to decide it with the final declaration contained in § 971 about the character of legitimacy that must be present in the children and descendants entitled to the reservation. This question consists in whether the duty to reserve can be established in favor of the natural grandchild, who is the natural child of a legitimate son or daughter of the first marriage.

"The natural grandchild is a forced heir of his father. If, then, the natural grandchild can not be denied, in the absence of other titles, direct interest in that the patrimony of his father be not diminished, why deny him the definitive right to the ownership of reservable property? Does the status of being a natural child affect one way or another the power to represent the father when it is sought to enforce the obligation imposed upon the grandfather by law as the result of the second marriage? Or which reason of those necessary to grant to the legitimate descendants this right of representation will be missing in the natural child? Is the injury directed against the father? The injury is not diminished by the fact that the child has the status of natural child. Is it the status of forced heir? The natural child has it too. Does the status of a descendant of the second marriage play any role? These facts are equally present in the natural and in the legitimate child.

"This question, however, more so than the one previously discussed, has been decided disfavorably by the terms of § 971. Once more the legislator has shown his reluctance to accept the rights of the natural children, even in such cases where it follows as the logical consequence of principles and doctrines which the Code could not but have acknowledged and sanctioned; and once more we must complain of these vacillations and inconsistencies which we have so often censured in the Code." (17 Scævola, *Código Civil* (5th ed.) 190, 191.)

Manresa, discussing the historical development of the institution of the reservation with respect to the persons in whose favor the obligation to reserve was established, men-

tions several judgments of the Supreme Court on the subject and concludes that the judgment of March 11, 1861, which declared that the obligation to reserve property was limited to the children by Ley de Toro No. 15 was in accordance with the law and was perfectly grounded and adds:

"But since this doctrine, although it is the most legal, was not by the same token the most just, the authors of the Civil Code believed, most correctly, that the basis and purpose of such reserves required that they be established in favor of the whole descending straight line, and hence the case is nowadays decided with full clarity in § § 968, 971, 972 and 973, all of which specifically mention legitimate children and descendants.

"This doctrine ratifies the judgment of June 10, 1918, according to which ordinary as well as lineal reservation has been established in favor of the legitimate relatives." [3] (7 Manresa, *Código Civil* (7th ed.), 303.)

Clemente de Diego in his work *Instituciones de Derecho Civil Español*, vol. 3, pp. 385 and 386, states thus:

"B) The persons in whose favor the reservation is established are the children and descendants of the first marriage. The terms used by the Code, 'widower,' 'widow,' 'children and descendants of the former,' 'legitimate children and descendants of the first marriage' (§ § 968, 969, 970, 972), as well as the underlying spirit of the system of the Code on the matter, tend to support the assertion that those children and descendants must be legitimate and common to the deceased spouse and to the surviving one obliged to reserve. The reservation is a benefit of the legitimate descending line common to both.

"It being a matter of strict interpretation it is not proper to enlarge the benefit of reservation so as to include the children that are not common, or the natural recognized children, because they are not legitimate, or the natural children of deceased legitimate children. (J. June 10, 1918.)"

---

[3] The lineal reservation was established by our Civil Code of 1902 in its § 799, equivalent to § 811 of the Civil Code of Spain, but said section was repealed by the Act of March 8, 1906 (Sess. Laws p. 37) with only the reservation established in § § 923 and 924 remaining in force today. *Veray Molinary* v. *Marín et al.*, 26 P.R.R. 181.

Valverde is of the same opinion. "According to the Code," —it is said— "the reservation has been established in favor of the children and descendants of the first marriage . . . . In providing that the reservation is established in favor of the children of the first marriage, § 968 excludes the natural children because they were born out of wedlock and in extending the reservation to the legitimate descendants of the children, it also excludes the grandchildren that might be natural children of a deceased legitimate child." (5 Valverde, *Tratado de Derecho Civil Español*, 464.)

Sánchez Román expresses himself in the following terms:

"The reservee or reservees in whose favor the reservation is established are undoubtedly, pursuant to the Code, the legitimate and common children and descendants of the deceased spouse and of the surviving one who by virtue of a new marriage is obliged to reserve. The words 'widower' and 'widow,' 'children and descendants of the former,' referring to the dissolved marriage, which are used in § § 968, 969, 970 and 972, and those of 'legitimate children and descendants of the first marriage,' leave no room for doubt that the Code only grants the favor of reservation to the common legitimate descendants of the deceased spouse and of the surviving one obliged to reserve." (6-III Sánchez Román, *Derecho Civil* (2d ed.), 1878.)

It is unnecessary to add names of other commentators who hold the same interpretative theory of the Civil Code of Spain to the effect that the reservation was established in favor of legitimate descendants.[4]

On his part Luis Muñoz Morales (*Anotaciones al Código Civil de Puerto Rico*, Book 3, p. 375) maintains that the following are excluded from the benefit of the reservation established in § 923, among others, "(b) The natural children of legitimate children of that marriage because § 926 (987 Sp.) declares that the obligation to reserve ceases if

---

[4] See also 8 Colin y Capitant, *Derecho Civil*, 576; 6 Martínez Ruiz, *Código Civil*, 264 and 268.

on the death of the father or mother who contracted a second marriage no legitimate children or descendants of the first marriage survive."

■■ From July 25, 1952, effective date of the Constitution of the Commonwealth of Puerto Rico, all children have, with respect to their parents and to the estate left by them, the same rights that correspond to legitimate children. See § 1 of Article II of the Constitution and Act No. 17 of August 20, 1952 (Sp. Sess. Laws, p. 200). From that date, then, the question under our consideration lacks importance since the distinction between legitimate and natural succession does not lie. However, we have been forced to examine the point because the constitutional provision and the law that make the rights of the illegitimate child equal to those of the legitimate one are not applicable to the facts of this case. No matter the period taken for determining the rights of the natural grandchildren, it would always be prior to the effectiveness of the Constitution. If we consider (1) the date of birth of the natural grandchildren, (2) the date or dates when Mrs. Vélez while a widow had acknowledged natural children, which is when the obligation to reserve arises, or (3) the date of the death of reserver Clara Vélez (January 20, 1952) which is the time for the perfection and consummation of the right of the reservees to the ownership of reservable property, we realize that all such dates are prior to the effectiveness of the Constitution.

We have already decided that the constitutional declaration of the equality of the children before the law has prospective effects, and that they cannot be applied retroactively to enlarge the inheritance rights of persons born before the Constitution came into effect. *Alvarez* v. *Alvarez*, 77 P.R.R. 862; *Sánchez* v. *Díaz*, 78 P.R.R. 771; *Márquez* v. *Avilés*, 79 *D.P.R.* 988, 252 F. 2d 715.

Therefore, the rights of the natural grandchildren in this case are governed by previous legislative action, which as we have seen, did not establish in their favor the obligation to reserve.

In view of the foregoing the judgment entered on March 15, 1956 by the Mayagüez Part of the Superior Court will be reversed insofar as it declares that the property acquired by Clara Vélez by hereditary title from her son José Villamil Vélez should be awarded only to the latter's acknowledged natural descendants, and the case will be remanded for further proceedings not incompatible with this opinion.

---

Separate Vote delivered by MR. JUSTICE SANTANA BECERRA.

In agreeing with the decision rendered I wish to state that for reasons which I shall timely set forth in the proper case I do not wholly subscribe, with the jurisprudential expression that it reaffirms, to the antepenultimate paragraph of the opinion which reads:

"We have already decided that the constitutional declaration of the equality of the children before the law has prospective effects, and that they cannot be applied retroactively to enlarge the inheritance rights of persons born before the Constitution came into effect. *Álvarez* v. *Álvarez*, 77 P.R.R. 862; *Sánchez* v. *Díaz*, 78 P.R.R. 771; *Márquez* v. *Avilés*, 79 *D.P.R.* 988, 252 F. 2d 715."

insofar as it implies that in all cases the declaration of equality of men and consequently of children before the law as well as the prohibition against making discrimination on account of birth, contained in the Bill of Rights of our Constitution, is applicable solely to those citizens who were born subsequent to July 25, 1952. This case only deals with a property right of hereditary origin which arose at the predecessor's death on January 20, 1952, governed by the legislation in force at that date, and not by Act No. 17 of

August 20, 1952 (Spec. Sess. Laws, p. 200), effective since July 25 of said year.[1]

---

[1] "All children have with respect to their parents and to the estate left by the latter, the same rights that correspond to legitimate children."