MERCEDES BERDECÍA, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, PONCE PART, ANTONIO J. MATTA, JUDGE, Respondent; ISABEL CARMEN SAURÍ TYRELL ET AL., Interveners.

No. C-62-21. Decided January 25, 1963.

*Héctor Lugo Bougal* and *Inez Acevedo de Campos* for petitioner. *Carlos E. Colón, Lorenzo Lagarde Garcés, Luis Negrón López, Benjamín Ortiz,* and *Pablo Andino Espejo* for interveners.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

In her continuous judicial peregrination to obtain full recognition of her rights as Félix Saurí Tyrell's child, once again Mercedes Saurí, née Berdecía, appears before this Court requesting that we review an order entered by the Superior Court, Ponce Part, the practical effect of which is to deprive her of the hereditary rights inherent in her status as an acknowledged natural child.

The background of this case is set forth in the opinion delivered in *Berdecía* v. *Tyrell*, 82 P.R.R. 674 (1961). It need only be recalled that petitioner was born on October 3, 1928, as a result of an affair between Dolores Berdecía and Félix Saurí Tyrell; that the latter died intestate on December 3, 1938; and that on August 18, 1952, began the action of filiation which ended in recognition by our judgment of May 23, 1961, summarily affirmed by an order entered on June 21, 1962, by the Court of Appeals for the First Circuit in *Tyrell* v. *Berdecía*, No. 6016.

In addition to the action of filiation, the original complaint alleged two causes of action regarding the annulment of the institution of heirs contained in the will of Rafael Saurí Tristani—Félix Saurí Tyrell's father and, consequently, plaintiff's natural grandfather—and for the declaration of the nonexistence of contracts, whose decision was postponed by the parties by means of a written stipulation to that effect pending final disposition of the main action of acknowledgment, inasmuch as petitioner's capacity to file said actions rested on the fundamental fact of her status as an acknowledged natural child. Plaintiff had the complaint recorded next to the description of certain real properties included in the estate left at the death of her natural grandfather, pursuant to § 91 of the Code of Civil Procedure, 1937 ed., 32

L.P.R.A. § 455.[1] *Olivera* v. *Registrar*, 51 P.R.R. 399 (1937) ; *Boerman* v. *Registrar of San Juan*, 31 P.R.R. 695 (1923).

While the appeal taken to the Court of Appeals for the First Circuit was still pending, and notwithstanding that the parties had stipulated not to take any action in connection with the second and the third causes of action until final judgment was entered as to the filiation, on July 24, 1961 defendants moved for the cancellation of the notices of lis pendens recorded as above stated. The motion rested on the allegation that plaintiff had no cause of action to challenge the institution of heirs contained in her natural grandfather's will because she was not a forced heir of the latter, and called attention to the doctrine established by this Supreme Court in *Ex parte Pérez*, 53 P.R.R. 20 (1938). Through this motion—which is unusual—was the sufficiency of the complaint thus challenged.

To have a full picture of the facts that must be known in order to render a decision, it must be recalled that Mr. Saurí Tristani died on January 25, 1952, under an open will executed on January 26, 1949, in which he instituted as his only heirs his legitimate child Isabel as to the thirds of strict legal portion and of extra portion, and his legitimate grandchildren Isabel Marie and Eugene Lois Nicole Saurí, the children of the above-mentioned Isabel, in the third of free disposal. It should be noted that when the last will was executed, his son Félix had predeceased him, and his natural grandchild Mercedes, not only had not been acknowledged, but, also, had not yet filed her second action that finally resulted in recognition.[2]

---

[1] Section 91 of the Code of Civil Procedure was not repealed upon the enactment of the Rules of Civil Procedure of 1958, Rule 72.

[2] Plaintiff filed an action of filiation during the lifetime of her alleged father, which ended by a judgment entered on November 30, 1938, dismissing the case for abandonment. See footnote 5 of the opinion delivered in *Berdecía* v. *Tyrell*, 82 P.R.R. 674 (1961).

In an elaborate order dated March 12, 1962, the trial court granted defendants' request holding that plaintiff "is not entitled to inherit in connection with the estate of Rafael Saurí Tristani." Its conclusions may be summarized as follows: (a) petitioner was not entitled to inherit under the legislation in force on the date of her birth (1928) and on the date of her natural father's death (1938), because pursuant to *Ex parte Pérez*, 53 P.R.R. 20 (1938), a natural grandchild had no right to inherit by right of representation in the *testamentary* succession of his natural grandfather; (b) Acts Nos. 446 and 447 of May 14, 1947, amending §§ 887 and 736 of the Civil Code, 1930, ed., 31 L.P.R.A. §§ 2621 and 2362 and which, as the trial court itself acknowledges, had the effect of "extending the right of representation of a recognized natural child in the testamentary succession in order that there might be no difference between both successions," are not applicable in determining petitioner's right to inherit, for such right is governed by the legislation in force at the time of her *birth* and not by the provisions in force at the time of the death of the predecessor or testator. In support of this last allegation it is claimed that the doctrine ratified in *Cancel* v. *Martínez*, 74 P.R.R. 100 (1952)—"hereditary rights are regulated by the legislation in force at the time the predecessor dies"—was set aside in *Márquez* v. *Avilés*, 79 P.R.R. 816 (1957).

█ 1. Both the legislation in force at the time of petitioner's birth—1928—and at the time her natural father died—1938—and at the time of her natural grandfather's death—1952—determined, among the rights of recognized natural children, the right "to receive the hereditary portion determined in this Code." Section 195 of the Civil Code, 1902 ed., as amended by Act of March 9, 1911 (Sess. Laws, p. 234), 1911 Revised Statutes, § 3265; § 127 of the Civil Code, 1930 ed., 31 L.P.R.A. § 506. Undoubtedly, therefore, once acknowledgment was obtained, a natural child was en-

titled *to inherit*, but only as to the hereditary portion determined in the very Code.

■■ Insofar as the right of representation is concerned, we must distinguish two periods: (1) until May 14, 1947, the date of approval of Acts Nos. 446 and 447, *supra*, an acknowledged natural grandchild could inherit by right of representation from his natural grandfather in the *intestate succession, Ex parte Smith et al.*, 14 P.R.R. 643 (1908) ; *Gijón* v. *Surillo et al.*, 31 P.R.R. 191 (1922) ; but such was not the case in the testamentary succession, *Ex parte Pérez*, 53 P.R.R. 20 (1938), ratified in the unpublished opinion delivered by the late Mr. Justice de Jesús in *Torres* v. *Torres*, decided December 19, 1947; see MUÑOZ MORALES, *Anotaciones al Código Civil de Puerto Rico* 323–28, *Libro Tercero* (1939) ; (2) beginning on May 14, 1947, and by virtue of the amendments of § § 887 [3] and 736 [4] of the Civil Code, a natural grandchild inherits by right of representation from his natural grandfather, both in the intestate succession (see, *Silva* v. *John Doe*, 75 P.R.R. 198, 204 (1953) (footnote 7)) and in the testamentary succession, thereby identifying himself with the natural and the legitimate family. This is so because § 736 specifically determined that "Forced heirs are [those whom the testator can not deprive of their legal portion] : 1. Legitimate children and descendants, with regard to their legitimate parents and ascendants, and *legally recognized natural children*, with regard to their natural or legitimate parents and ascendants." [5]

---

[3] "The right which all the *legitimate or legally-recognized natural* relatives of a person have to succeed him in all the rights which he would have if alive, or which he might have inherited, is called the right of representation."

[4] "Forced heirs are: 1. Legitimate children and descendants, with regard to their legitimate parents and ascendants, *and legally recognized natural children*, with regard to their *natural or legitimate* parents and ascendants. 2. ...."

[5] Because we consider it of a great interest, we attach hereto as Appendix A a copy of the opinion delivered by Mr. Justice de Jesús in *Torres*

2. Once these alleged preliminaries are laid down, the problem raised in this case is merely to determine whether Mercedes Saurí Berdecía's hereditary rights in the *testamentary inheritance* of her natural grandfather are governed by the law in force at the time of her birth, at the time her natural father died, or at the time of her natural grandfather's death.

*Ex parte Pérez*, 53 P.R.R. 20 (1938) holds, quoting from the syllabus, "as the testatrix died in 1934, her natural grandson, that is, a natural child of her legitimate son, has no right, *according to the law in force at that time*, to succeed her in representation of his natural father." And in *Torres v. Torres, supra*, which also involved the succession of a testatrix who had died in 1945, it was held, in the only footnote of the opinion, that "The law determining hereditary rights is not the law in force at the time *the alleged heir died* [the natural father], but the law in force when his predecessor [the natural grandmother] died." [6] In *Ex parte Smith et al.*, 14 P.R.R. 643 (1908), which involved an intestate inheritance, it was likewise held that the hereditary rights of a grandchild to inherit by right of representation from his paternal grandfather, are governed by the laws in force at the time of the death of his grandfather, *whose estate is to be distributed and not by the laws in force at the death*

---

v. *Torres*. We call attention to the clear inference derived from footnote 1 regarding the effect of Acts 446 and 447 in connection with the right of representation in the natural family, and which the trial judge correctly states thus: "We do not doubt, and that is our construction of the words of the Honorable Angel R. de Jesús, that it was the legislative intention, in enacting Acts 446 and 447 ... to extend the right of representation to the testamentary succession in order that there would be no difference between both successions."

[6] In the *Torres* case the legitimate children of the testatrix successfully challenged the testamentary institution made by the natural grandmother in the third of the portion by force of law and in the third of extra portion in favor of a natural grandchild, the acknowledged natural child of a predeceased legitimate child. The natural grandchild unsuccessfully invoked the right of representation in support of the validity of the testamentary provision.

*of the father.* The holding in *Correa* v. *Correa*, 18 P.R.R. 115, 118 (1912) is to the same effect. Finally, *Gijón* v. *Surillo et al.*, 31 P.R.R. 191 (1922), clearly establishes that an acknowledged natural child has the right to inherit from the lawful father of his natural mother as her representative, and that said right must be determined in accordance with the law in force at the time of the death of the author of the estate and not in accordance with that in force when the child was born.

These holdings are but a specific application of the doctrine invariably followed and strictly ratified in the sense that the hereditary rights are governed by the laws in force at the time of the death of the predecessor or testator and which we have uniformly applied in *Lucero et al.* v. *Heirs of Vilá*, 17 P.R.R. 141 (1911) ; *Torres et al.* v. *Rubianes et al.*, 20 P.R.R. 316 (1914) ; *Velázquez* v. *De Choudens et al.*, 29 P.R.R. 481, 483 (1921) ; *Febre et al.* v. *Febre*, 40 P.R.R. 208 (1929) ; *Travieso* v. *Del Toro*, 74 P.R.R. 940 (1953) ;[7] *Cancel* v. *Martínez*, 74 P.R.R. 100 (1952) ; *Ab Intestato of Ana Garroti Padilla*, 79 P.R.R. 181 (1956) ; *Heirs of Rosario* v. *Rosario*, 85 P.R.R. 127 (1962).[8] Even if we construed the case of *Esterás* v. *Esterás*, 24 P.R.R. 413 (1916), as suggested by the trial court—one must turn to the legislation in force at the time of the child's birth to determine whatever rights he may have in the inheritance of his father—we would always obtain the same result, for the legislation in force in 1928, when Mercedes Saurí Berdecía was born, recognized her *right to inherit* the hereditary portion determined by the

---

[7] We said at p. 944: "The applicable law as to the juridical effectiveness of a will and as to the *content*, scope and extent of the hereditary rights of the alleged successors is that which prevailed when the *ancestor died*, and not the one prevailing when the will was executed."

[8] A corollary of this doctrine is the principle that "the substantive rights involved in a hereditary partition are determined and governed by the laws which prevail at the time of the predecessor's death," and not those in force when the partition takes place. *Ex parte Cortés*, 86 P.R.R. 111 (1962).

Code, and, we add, since this portion may be established by the law in force at the time of the death of the person whose succession is involved. The *Esterás* case involved the "acknowledgment" of an adulterous child who, under the legislation in force at the time of his birth, was only entitled to support. *Cf. Rossy* v. *Martínez*, 70 P.R.R. 703 (1949).

■ *Márquez* v. *Avilés*, 79 P.R.R. 816 (1957), *aff'd*, 252 F.2d 715 (1958), did not operate to "discard" the doctrine of *Cancel* v. *Martínez*, *supra*, and the numerous cases above-cited. That case involved certain adulterous children pursuant to the law in force at the time of their birth. As such they were entitled only to support, but by virtue of § 2 of Act No. 229 of May 12, 1942, as amended, 31 L.P.R.A. § 502, it was provided that said children shall be considered as natural children for the sole additional purpose of bearing the surname of their parents. Clearly, recognition with limited effects did not entitle them to inherit. *Cf. Ex parte Vélez*, 81 P.R.R. 634 (1960); *Alvarez* v. *Alvarez*, 77 P.R.R. 862 (1955); *Sánchez* v. *Díaz*, 78 P.R.R. 771 (1955); *Cortés* v. *Cortés*, 73 P.R.R. 643 (1952). In the instant case, petitioner, as the acknowledged natural child of unmarried parents, had the right to inherit, under the law in force at the time of her birth as well as under the law in force at the time of her natural father's death, at the time of the execution of the will of her natural grandfather, and at the time of the latter's death; and that was one of the juridical consequences of her filiation.

The order entered by the Superior Court, Ponce Part, on March 12, 1962, shall be set aside and the case remanded for further proceedings not inconsistent with this opinion.[9]

---

[9] This litigation has been going on for ten years, and it is to the best interest of all parties concerned that it be definitively decided as soon as possible.

## APPENDIX A

GABRIEL TORRES LABORDE ET AL., Plaintiffs and Appellees, *v.* RAMÓN TORRES OLIVENCIA, minor, ETC., Defendant and Appellant.

No. 9515.   Decided December 19, 1947.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

Mercedes Laborde died in Ponce on March 14, 1945, under a will executed on May 12, 1941.   She stated in her will that she was the widow of Marcelino Torres, whom she had married for the first and only time; that during her marriage she had the following children: Mercedes, Carlos, Gabriel, Ramón, Isabel Luz, Concepción, and Rafael; and that Ramón died leaving as his sole and universal heir his acknowledged natural child, Ramón Torres Olivencia.   She went on to say that she instituted as her sole and universal heirs with respect to the third of the portion by force of law in equal shares, her above-mentioned children and that inasmuch as her son Ramón had died, she instituted Ramón Torres Olivencia in his representation as heir of his portion in the third by force of law.   She also left her aforesaid grandchild the entire third of extra portion and the third of free disposal.

The heirs Gabriel, Luz Isabel, and Rafael hold that the will is null insofar as it instituted Ramón Torres Olivencia an heir in the third by force of law and the third of extra portion and insofar as it holds that he has the right of representation as Ramón Torres Laborde's natural child.

In order to obtain a judicial interpretation of the testamentary provisions above-mentioned, Gabriel, Luz Isabel, and Rafael filed this action for declaratory judgment in the trial court.

Defendant filed a motion to dismiss the complaint on the ground that it did not state facts constituting a cause of action.   The motion was dismissed and, there being no con-

troversy as to the facts and wishing to rely on the merits of the motion to dismiss, defendant prayed for judgment on the pleadings, which judgment was entered granting the complaint. Defendant relies on the right of representation to support the validity of the testamentary provision.

The question raised by defendant was adversely decided in *Ex parte Pérez*, 53 P.R.R. 20. In that case the testatrix, the natural grandmother of petitioners therein, died on June 28, 1934, under a will executed on June 20, 1921. She instituted as her sole and universal heirs her legitimate children José, Fernando, and Isabel Pérez Llera, and Carmen Luisa Rucabado Llera, the first three being the offspring of her first marriage with Fernando Pérez, and the last-named child her daughter by her second marriage to Mateo Rucabado. The heir, José Pérez Llera, the natural father of petitioners therein, predeceased the testatrix by two years, leaving as his sole heirs the petitioners and their grandmother, Isabel Llera Vázquez. When the latter died, petitioners requested that a partitioner be named with respect to the inheritance left by Isabel Llera Vázquez. They alleged that they were her heirs in representation of their natural father José Pérez Llera and that, consequently, they were entitled to intervene in the partition of the inheritance.

The executor objected alleging by way of a demurrer that the petition did not state facts and that petitioners had no right to intervene in the partition as they were neither heirs nor had any right in the inheritance of their natural grandmother.

Considering the question thus raised, which is the same, in principle, as the question raised by defendant herein, after analyzing the legal precepts applicable to the law and the decisions construing such precepts, this Court held that inasmuch as the grandmother had died under a will and petitioners were recognized natural children, they neither had

a right to the inheritance by representation of their father, nor were they forced heirs of their grandmother.[1]

In the opinion delivered in that case the questions raised in this case are examined, and since its doctrine is not challenged and there being no reasons to disturb it here, we must follow that doctrine and, consequently, we must affirm the judgment appealed from.

---

[1] The law determining hereditary rights is not the law in force at the time the alleged heir died, but the law in force when his predecessor died. *Ex parte Pérez, supra; Correa* v. *Correa,* 18 P.R.R. 115, and *Ex parte Smith et al.,* 14 P.R.R. 643.   Consequently, neither Act No. 13, approved March 29, 1945 (Sess. Laws, p. 38), nor Acts Nos. 446 and 447 of May 14, 1947 (Sess. Laws, p. 944), are applicable to this case, inasmuch as they went into effect after the death of Mercedes Laborde.