ANDREW L. MATUSIK, APPELLANT, v. A. O. LARGE AND BILLIE PEARL LARGE, RESPONDENTS.

No. 5619

April 3, 1969                         452 P.2d 457

*Daniel R. Walsh,* of Carson City, for Appellant.

*Roland W. Belanger,* of Lovelock, for Respondents.

**OPINION**

By the Court, MOWBRAY, J.:

The principal issue presented for our consideration on this appeal is whether the trial court erred in refusing to set aside a sale of a truck-mounted well-drilling rig purchased by the respondents, A. O. Large and Billie Pearl Large, from C. C. Davidson, now deceased. The appellant, Andrew L. Matusik, claims that the sale was a conveyance of Davidson's assets made to defraud his creditors.

1. *The Matusik-Davidson Litigation.*

In 1961, Matusik sued Davidson in California and received a judgment in the sum of $28,038.76. The judgment was only partially satisfied; so Matusik sued Davidson on the California judgment here in Nevada in 1962. When he commenced the Nevada action, Matusik attached Davidson's well-drilling rig, the subject of this case. Davidson moved to have the rig released. Matusik did not resist the motion, and the district judge ordered the rig returned to Davidson. Davidson sold the rig to A. O. Large in April 1964. In September 1964, Matusik obtained a Nevada judgment against Davidson in the principal amount of $16,038.76, representing the balance due on the California judgment. A writ of execution was issued and returned unsatisfied by the sheriff. In January 1965, Matusik's counsel examined Davidson as a judgment debtor. NRS 21.270; NRCP 69(a). The examination revealed that Davidson was penniless and that he had sold his rig and equipment to A. O. Large. Davidson died on January 26, 1965.

2. *The Matusik-Large Litigation.*

Matusik sued A. O. Large and Davidson in September 1965, approximately 8 months after he learned of the purchase by Large of Davidson's rig, asking the court to set aside the sale on the grounds that it was a conveyance made to defraud Davidson's creditors. When Matusik learned that Davidson was deceased, he dismissed the action against him and, upon counsels' stipulation, added Billie Pearl Large as a party defendant. The Matusik-Large case was heard in March 1966 before the court sitting without a jury, and judgment was entered in favor of the defendants, from which adverse ruling Matusik has appealed to this court.

3. *Burden of Proof.*

In 1931, Nevada adopted the Uniform Fraudulent Conveyance Act. NRS 112.050 defines a fraudulent conveyance thus:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

A creditor such as the appellant in this case who relies on this statute to show the constructive fraud necessary to set aside a conveyance bears the burden of proof both with respect to insolvency of the vendor existing at the time or resulting from the conveyance and with respect to the absence or inadequacy of consideration. Neubauer v. Cloutier, 122 N.W.2d 623 (Minn. 1963).

4. *Insolvency.*

Appellant offered during the trial, as Exhibit H, the transcript of Davidson's testimony which Davidson gave during his judgment debtor examination in January 1965. It was offered to establish Davidson's insolvency at the time of or resulting from the sale of the rig to Large. It was rejected by the trial judge for two reasons: (1) The "dead man" statute, NRS 48.010,[1] precluded its admission; (2) Large had no opportunity to cross-examine Davidson when he was examined by Matusik's counsel, and therefor Large could not be bound by the testimony. Clearly, the "dead man" statute is not applicable in this case. Our court has on numerous occasions stated the reason for the rule. In Tallman v. First Nat'l Bank, 66 Nev. 248, 256, 208 P.2d 302, 305 (1949), this court said:

"The reason for the rule is well stated in Bright v. Virginia & Gold Hill Water Co., 9 Cir., 270 F. 410, 412, as follows:

" 'The whole object of the Code provision is to place the living and the dead upon terms of perfect equality, and, the dead not being able to testify, the living shall not.' "

---

[1]NRS 48.010. "All persons capable of perception and communication may be witnesses; when witnesses incompetent.

"1. All persons, without exception, otherwise than as specified in this chapter, who, having organs of sense, can perceive, and perceiving can make known their perceptions to others, may be witnesses in any action or proceeding in any court of the state. Facts which, by the common law, would cause the exclusion of witnesses, may still be shown for the purpose of affecting their credibility. No person shall be allowed to testify:

"(a) When the other party to the transaction is dead."

And, again, in discussing the application of the rule, the court said in Hough v. Reserve Gold Mining Co., 55 Nev. 375, 386, 35 P.2d 742, 744 (1934): "While the rule of the statute, which aims at equality, is salutary in a general way, it sometimes operates harshly in particular cases by preventing a party from proving his case. A statute of this character should be construed so as not to exclude testimony unless clearly inhibited by its terms. In other words, it ought to be construed in view of the mischief it might cause." Since the testimony sought to be introduced was the testimony of the decedent himself as it was preserved by the court reporter, the "dead man" statute was not applicable.

Normally, in a judgment debtor examination, the only parties present are the debtor and the creditor, and the creditor examines the debtor with the sole design of adducing information regarding the debtor's assets which might be available to satisfy the obligation due the creditor. Other parties—such as, in this case, an earlier vendee of the debtor—are not present. Davidson testified at the time of his examination that he had $15.30 and was living on his social security check. His testimony regarding the sale of the rig to Large was to the effect that the rig comprised the only asset he had at the time of the sale. The declarations of a third person are admissible against a party wherever privity of estate exists between the declarant and the party, the term "privity of estate" generally denoting in this respect a succession in rights. Thus, whenever a party claims under, or in, the interest or right of another, the declarations of such other person pertaining to the subject of the claim are admissible against him. We conclude, therefore, that Davidson's sworn testimony given at his judgment debtor examination was admissible for the limited purpose of establishing his insolvency at the time of the sale of the rig. However, the trial court's ruling does not affect the court's judgment, for the reason that a finding of insolvency at the time of the vendor's transfer is not sufficient to set aside the sale if *"fair consideration" was given by the vendee.* The Supreme Court of Minnesota, in construing conveyances by an insolvent under the Uniform Fraudulent Conveyance Act, has said in Johnson v. O'Brien, 144 N.W.2d 720, 722 (Minn. 1966):

"What we said in Thompson v. Schiek, 171 Minn. 284, 287, 213 N.W. 911, 912, applies with equal force in the instant case:

" 'Payment of an honest debt is not fraudulent under the general statutes against fraudulent conveyances although it operates as a preference, the rule being that a preference by an insolvent debtor of one of his creditors can be avoided only by appropriate proceedings under the bankruptcy law and is not open to attack in an action brought by another creditor.' "

See also Nicklaus v. Peoples Bank & Trust Co., 258 F.Supp. 482 (E.D. Ark. 1965); Geisert v. Corriveau, 140 F.Supp. 29 (E.D. Mich. 1956); Workman v. Bryce, 310 P.2d 228 (Wash. 1957).

5. *Fair Consideration.*

Large had loaned money to Davidson on prior occasions, which loans Davidson had partially repaid. In April 1964, Davidson owed Large $1,600. The consideration paid by Large for the rig was approximately $6,100. Large agreed to pay an encumbrance due on the rig and another one due on Davidson's automobile, totaling $4,074, plus $426 cash to Davidson.

Appellant argues that the satisfaction of the antecedent debt due Large and the assumption of the debts comprising the encumbrances may not be considered as part of the "fair consideration" which is necessary to sustain the validity of the sale. We do not agree. NRS 112.040[2] defines "fair consideration" as including the satisfaction of an antecedent debt. The record clearly establishes that the debt due Large was a valid and existing one. Davidson had made previous payments to Large on the obligation.

The court commented in Cole v. Commissioner of Internal Revenue, 297 F.2d 174, 175 (8th Cir. 1961): "In Bangs Milling Co. v. Burns, 152 Mo. 350, 53 S.W. 923, 930, the Supreme Court of Missouri said:

" '. . . The sole purpose and object of the statute on the subject of fraudulent conveyances are to secure the appropriation of the debtor's property to the payment of his debts— not all of his debts, however, but such part thereof as he can and prefers to pay; else all preferences would be prohibited; and when, therefor, the result of any given conveyance is to appropriate the property conveyed, at a fair valuation, to the payment of an honest indebtedness, or a part thereof, it cannot

---

[2]NRS 112.040. "Fair consideration. Fair consideration is given for property, or obligation,

"1. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied. . . ."

208

fall within the condemnation of the statute, for, as said above, what the law directly sanctions it will not by indirection condemn. So long as the entire property conveyed is subjected to the payment of some honest debt of the grantor, the conveyance is honest and lawful; so long as nothing is taken from the creditors of the grantor, the transaction cannot be fraudulent against them; and, so long as the property is subject to the payment of an honest debt, it cannot be said to be withdrawn from the creditor of the grantor. ∴ . .'

"See, also: Wall v. Breedy, 161 Mo. 625, 642, 61 S.W. 864, 866; Citizens' Bank of Hayti v. McElvain, 280 Mo. 505, 219 S.W. 75; Burston v. Fennewald, 222 Mo.App. 128, 2 S.W.2d 824, 828; Friedel v. Bailey, 329 Mo. 22, 44 S.W.2d 9, 15; Allison v. Mildred (Mo.), 307 S.W.2d 447, 456."

See also Carraco Oil Co. v. Roberts, 397 P.2d 126 (Okla. 1964).

It is equally well established that the assumption of a liability or debt of the vendor by the vendee may be considered when determining whether the consideration paid was "fair." The court in Commercial Nat'l Bank v. McCandlish, 23 F.2d 986, 988 (D.C.Cir. 1928), held: " 'The assumption of a liability at the request of the promisor is a valuable consideration, as, for example, a guaranty of the promisor's debt. . . .' 15 C.J. 320."

The issue then narrows down to a determination of whether the total consideration paid, approximately $6,100, was so far below the actual value of the property conveyed that it failed to meet the test of "fair consideration." In this regard a good standard or test was recently enunciated by the Montana Supreme Court in White v. Nollmeyer, 443 P.2d 873, 883 (Mont. 1968):

"On the issue of fair consideration for the transfers, the test to be applied is whether the disparity between the true value of the property transferred and the price paid is so great as to shock the conscience and strike the understanding at once with the conviction that such transfer never could have been made in good faith."

The record shows that Large did advertise the rig for sale in a monthly publication for $15,500. However, the only firm offer he received was $8,000, and that was on terms. At the time of trial, Large still had the rig in his possession. Considering the special use for such equipment and its general marketability, we cannot hold as a matter of law that "the disparity

between the true value of the property transferred and the price paid [was] so great as to shock the conscience and strike the understanding at once with the conviction that such transfer never could have been made in good faith."

We affirm the judgment of the district court.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.