Morris Aarons, S.
The decedent, known as “ Jimi ” Hendrix, was a ‘ ‘ rock ’ ’ musical entertainer who experienced a meteoric rise to financial success. He died in 1970 without leaving a will and, upon the petition of his father, a nonrelative was appointed administrator of his estate. The administrator later obtained permission to resign and an administrator de boms non is now in office, again with the consent of the father.
At this time application is made by the decedent’s father, who claims to be his son’s sole distributee, for payment of a part of his distributive share of the estate. The petition alleges* that the assets of the estate are in excess of $400,000 and are more *440 than adequate to meet the obligations of the estate. The administrator de bonis non has consented to the advance payment sought by the father. Despite this concurrence, the petitioner requested that creditors of the estate be cited upon this application and this has been done. Certain creditors have appeared and opposition to the petition has been expressed by them.
The petitioner also cited an infant as the alleged daughter of the decedent. A guardian ad litem has appeared for the infant and vigorously opposes the petition on the ground that the infant, and not the father, is the sole distributee of the decedent. It is recognized by the guardian ad litem that the mother of the infant and the decedent were not married and that a filiation proceeding was never instituted. It is also alleged by the guardian ad litem that the decedent and the infant’s mother resided together for some time prior to the child’s birth but not thereafter and that an attorney representing the mother exerted efforts to obtain recognition of the child by decedent. At the time of the decedent’s death he had not acknowledged paternity.
EPTL 4-1.2 (subd. [a], par. [2]) provides: “An illegitimate child is the legitimate child of his father .so that he and his issue inherit from his father if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child:”
It is asserted on behalf of the infant that the quoted statute discriminates against illegitimates and violates the equal proection clause of the Fourteenth Amendment to the United States Constitution. It is averred that Levy v. Louisiana (391 U. S. 68) is controlling.
While the infant is cited as an alleged distributee and the guardian ad litem contends that his ward, although illegitimate, is the decedent’s sole distributee, there is no proof before the court that the infant is a child of the decedent. In order to establish this as a fact, it would be necessary to conduct a hearing equivalent to that required in a filiation proceeding and, were paternity to be established at such hearing, the infant could succeed only if the above-quoted statute were to be declared unconstitutional. The court considers it expedient to consider the constitutional question at this time. If the statute is constitutionally valid, paternity is irrelevant and the infant is without status to contest the petition. On the other hand, if the statute is unconstitutional and, as a consequence, the Constitution requires recognition of all illegitimates on an equal basis, the infant, upon establishing paternity, would be the decedent’s sole *441 distributee and the petition of the father then would fail.
Levy v. Louisiana (supra) was an action instituted on behalf of five illegitimate children to recover for the wrongful death of their mother. The holding in the State courts was that statutory basis for such an action by illegitimates was lacking. The contention that the illegitimates were denied equal protection of the law was rejected by the Louisiana courts. The United States Supreme Court reversed holding that, while a State has broad powers to make classifications, it may not draw a line which constitutes an invidious discrimination against a particular class. The court stated the problem to be whether the line drawn is a rational one. The court said (supra, p. 72): “ Legitimacy or illegitimacy of birth has no relation to the nature of the wrong allegedly inflicted on the mother. These children, though illegitimate, were dependent on her; she cared for them and nurtured them; they were indeed hers in the biological and in the spiritual sense; in her death they suffered wrong in the sense that any dependent would.
“ We conclude that it is invidious to discriminate against them when no action, conduct, or demeanor of theirs is possibly relevant to the harm that was done the mother. ’ ’
Glona v. American Guar. Co. (391 U. S. 73) involves the reverse of the fact situation in Levy in that a mother of an illegitimate son was suing to recover for his wrongful death. That case also arose in Louisiana and, in line with the Levy case, the United States Supreme Court held that, since there was no basis for assuming that the cause of illegitimacy would be served if a mother is allowed to recover for the wrongful death of her illegitmate son, a bar to relief would be a denial of equal protection of the law. A dissenting opinion of Mr. Justice Harlan, joined in by Mr. Justice Black and Mr. Justice Stewart, characterized the Levy and Glona decisions as constitutional curiosities.
The Levy decision was followed in Schmoll v. Creecy (54 N. J. 194), in an action by a legal wife and two illegitimate children to recover for the wrongful death of the decedent. In the course of its opinion, the Supreme Court of New Jersey said (pp. 199-200): “ There are of course differences between a wrongful death statute and an inheritance statute. A wrongful death statute itself determines who shall benefit, and the decedent has no voice in the matter. On the other hand, an inheritance statute embodies no more than the presumed intention of decedents who do not express their wish. It may therefore be urged that our inheritance statute does not generate a distinction between legitimate and illegitimate children but *442 merely reflects the probable intent of individuals who are themselves constitutionally free to draw that line and who presumptively subscribe to the view of the statute by omitting to direct otherwise by will. Then, too, at least in the case of a male decedent, there is fear of spurious claimants, a problem more formidable in estate situations than in wrongul death actions in which the amount of the recovery will depend critically upon the amount of pecuniary injury shown.”
In the case at bar, we are not concerned with a wrongful death statute but with an inheritance statute and, for this reason, the foregoing cases are relevant only to the extent that some applicable rationale of decision can be found in them. Another important distinguishing feature arises from the fact that the Levy and Clona cases were concerned with rights between an illegitimate child and the child’s mother with no element of doubt as to the existence of blood relationship between such persons. In the case at bar, there is an unproved claim of paternity, a blood relationship which, unlike that existing between a mother and child, is never possible of incontrovertible proof.
Burnett v. Camden (254 N. E. 2d 199; 255 N. E. 2d 650 [Sup. Ct. Ind.]) involved the question of heirship in that an illegitimate child was seeking a determination as to her right to inherit from her alleged natural father. The pertinent statute provided for such recognition of an illegitimate only if (1) the paternity of the child had been established by law during the father’s lifetime or (2) the putative father married the mother and acknowledged the child as his own. Neither of these requirements had been met in the case before the Indiana court. In holding the statute to be constitutional, the court pointed out that in both Levy and Clona, no question of maternity existed and, furthermore, in those decisions the basis for discrimination appeared to be premised on moral precepts which occasioned the use in the opinion of such words as “sin ”, “ morals ”, “ general welfare ”, and “ wrong of the biological parent ”. The court went on to point out other obvious distinctions in that in the case then at bar, paternity was not only uncertain but the very issue in the case, and the Indiana statute (like the New York statute) imposed no condition upon the inheritance from a mother but did impose conditions upon inheritance from a father in order to prevent fraudulent claims and to bar unscrupulous impostors. The court concluded that the classifications drawn by the statute were sound and rational. Certiorari was denied (399 U. S. 901). So also in Matter of Pakarinen (287 Minn. 330) it was held that a Minnesota statute requiring that paternity be established by *443 an attested writing executed by the father did not violate the equal protection clause of the United States Constitution.
It is apparent that the New York statute reflects no antagonism toward children of unwed parents but, quite to the contrary, the legislation was enacted to benefit such children. A necessary distinction is required between the child of a female, where the fact of maternity is a witnessed biological event, and the child of a male, where the fact of paternity is difficult to ascertain. Reasonable proof of the latter fact, even if not conclusive, can be established in the lifetime of the putative father, but a charge of paternity pressed after the death of the putative father cannot be refuted by employment of blood tests and, since the deceased is not here to rebut the accusation, his reputation could be maligned and his possessions distributed to a stranger. The legislative purpose was not aimed at a diminution of the rights of illegitimates, but instead to grant them a status as distributees upon reasonable proof of parenthood.
It well may be that our Legislature could have assumed a more liberal view in order to permit proof of paternity by evidence less formal than an order of filiation. It does seem that the requirement that a legal proceeding be instituted within a limited time is somewhat restrictive and overly protective of putative fathers. Had the Legislature chosen to assume a more sympathetic attitude towards the plight of illegitimates it could have dictated a less stringent time limitation, such as the fixation of the time as the lifetime of the alleged parent. The statute might well have provided for recognition of the child through acknowledgment on the part of the parent or through proof of cohabitation of the parents. While it is true that a broader statute, permitting proof of paternity on a factual basis at any time, would present problems to a trial court, particularly questions as to the credibility of witnesses, there still seems to remain in our statute certain outdated moral concepts and remnants of the unfortunate practice of visiting the sins of the parents upon the children.
However restrictive the statute may seem from a liberal viewpoint, the immediate problem of the court is to determine whether there is a reasonable basis for the statute or, to the contrary, its provisions constitute an arbitrary discrimination against those illegitimates who claim a paternal relationship.
“It is well settled that the guarantee of equal protection is applicable only where classification and discrimination are entirely arbitrary and destitute of reasonable basis. To constitute a denial of equal protection there must be a purposeful and systematic discrimination designed to favor one individual *444 or class over another individual or class with no .rational basis for a differentiation between them”. (Matter of Posner v. Rockefeller, 31 A D 2d 352, 353.) (Cf. Truax v. Corrigan, 257 U. S. 312, 337; Marquez v. Aviles, 252 F. 2d 715, cert. den. 356 U. S. 952; Matter of Crawford, 64 Misc 2d 758.)
Latine v. Vmcent (401 U. S. 532) is decisive of the issue herein. That case, like Levy and Glona, involved the status of an illegitimate under the laws of Louisiana where very limited rights of inheritance are granted and illegitimate children can take from their father by intestate succession “ to the exclusion only of the state ”. They obtain full rights of inheritance only if legitimated or adopted. The New York statute is much more liberal in granting full recognition in terms of succession rights to a mother’s illegitimate children and procurable succession rights to a father’s illegitimate children.
In referring to the restricted status of illegitimates under Louisiana law the majority opinion in Labine v. Vincent stated (p. 537): “ These rules for intestate succession may or may not reflect the intent of particular parents. Many will think that it is unfortunate that the rules are so rigid. Others will think differently. But the choices reflected by the intestate succession statute are choices which it is within the power of the State to make. The Federal Constitution does not give this Court the power to overturn the State’s choice under the guise of constitutional interpretation because the Justices of this Court believe that they can provide better rules.”
The court concludes that the New York statute requiring a reasonable 'Substantiation of the claim of paternity does not impose an improper condition and does not result in a discrimination constituting a denial of equal protection of the law to an illegitimate. It is held that the infant has not established that she is a distributee of decedent and, as a consequence, she lacks status to oppose the petition.
Inasmuch as creditors of the estate are opposing the petition, a fact issue exists as to any amount available for distribution to the decedent’s father as sole distributee and there may be question as to the -solvency of the estate. The proceeding for the judicial -settlement of the account of the administrator is pending and in that accounting proceeding this fact issue can be resolved. Accordingly the court will consolidate this application with the accounting proceeding.
Submit order of consolidation and, if desired, the same order, submitted on notice, may contain the determination in this opinion as to the constitutionality of EPTL 4-1.2.