P. F. WEAKS, dba WEAKS CONSTRUCTION COMPANY, Appellant, v. GERALD E. MOUNTER and E. RUTH MOUNTER, ....................................., an infant,[1] by JOHN TOM ROSS, her Guardian ad Litem, Respondents.

No. 6509

February 25, 1972                    493 P.2d 1307

*Wait, Shamberger & Georgeson,* of Reno, for Appellant.

*Martillaro & Bucchianeri,* of Carson City, for Respondents Gerald E. Mounter and E. Ruth Mounter.

*Ross & Crow,* of Carson City, for Respondent .................. .................., an infant.

---

[1] It is the practice of this court to omit the minor's proper name where there may be an unwarranted reflection.

## OPINION

By the Court, ZENOFF, C. J.:

A truck-motorcycle collision occurred on August 31, 1966, at the intersection of U.S. 50 and State Route 17, near Virginia City, instantly killing James E. Mounter, a minor aged 19.

Two principal questions are presented on appeal. One is the standing of an illegitimate minor child to sue for the death of its father who was also a minor. The original plaintiffs were the natural mother and father of Mounter, but upon motion to intervene the illegitimate and posthumous daughter of the deceased was allowed as an additional plaintiff.

A second issue concerns the trial court's application of NRS 48.010, the Dead Man Statute, as excluding the testimony of eyewitness William Goldson, the driver of the truck with which the deceased collided. He was in the employ of P. F. Weaks, the truck's owner and doing business as Weaks Construction Company, and was a witness testifying on Weaks' behalf. While he was relating the germane facts of the accident the trial court prevented further testimony on the assertion of the statute. This exclusion from testifying was in the face of the plaintiffs having been permitted already to put on eyewitness testimony of Andrew Minister, a passenger in another car who claimed he

saw the accident. Nevertheless, Goldson was stopped at the point where the trial court felt that the facts would be within the knowledge of the deceased, and therefore, under the Dead Man Statute, the agent-employee would be prevented from telling his version.

Verdicts were rendered in favor of the natural parents for $10,000, plus $4,000 attorneys' fees, and in favor of the minor daughter for $20,000. Appellant also contests the division of the verdicts claiming they should be one verdict, if at all, and that their total prohibited the assessment of attorneys' fees.

1. NRS 41.080 provides for the survivability of wrongful death actions and NRS 12.080 and NRS 12.090 specify who has the right to sue in such actions. "Whatever standing plaintiffs have . . . must be found in the statutes of Nevada. The remedy [in wrongful death cases], being wholly statutory, is exclusive. The statute provides the only measure of damages, and designates the only persons who can maintain such action." Wells, Inc. v. Shoemake, 64 Nev. 57, 66, 177 P.2d 451 (1947); Perry v. Tonopah Mining Co., 13 F.2d 865 (D. Nev. 1915).

At the time of the accident no statute specifically designated a right of action for the child of a minor. Respondents justify this suit on the ground that NRS 41.090 allows a child to sue for the death of its parent.[2] NRS 12.080 sets out the right of the parents of the deceased minor to sue, but further adds, "a guardian may maintain an action for the injury or death of his ward, when such injury or death is caused by the wrongful act or neglect of another, the action by the guardian *to be prosecuted for the benefit of the heirs of the ward*." (Emphasis supplied.)

It readily becomes apparent therefore that we must decide whether the right of a "child" of NRS 41.090 includes an

---

[2]41.090 *Proceeds of judgment not liable for debt of deceased; damages.*

1. The proceeds of any judgment obtained in any action brought under the provisions of NRS 41.080 and this section shall not be liable for any debt of the deceased, provided he or she shall have left a husband, wife, child, father, mother, brother, sister, or child or children of a deceased child.

2. The court or jury, as the case may be, in every such action may give such damages, pecuniary and exemplary, as shall be deemed fair and just. Every person entitled to maintain such action, and every person for whose benefit such action is brought, may prove his respective damages, and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for loss of probable future companionship, society and comfort.

illegitimate child, and under NRS 12.080, whether the posthumous illegitimate child is an heir within the statute or at all.[3]

The child's mother testified that she became pregnant by James E. Mounter and together they made plans to marry, that he went to the doctor with her, that the child had already been given his surname, that further evidence showed that the deceased boy's parents were apprised by their son and future daughter-in-law of the pregnancy, that they accepted the child as his and later aided the mother in the expenses of the birth. Throughout the litigation no doubt was thrown upon the child's paternity, only appellant claims that because the deceased never signed a declaration acknowledging the child as required by NRS 134.170 the child is not an heir within the contemplation of NRS 12.080 and cannot bring this lawsuit for the wrongful death of its father.[4]

In this regard there has been a remarkable departure in the law. Indeed, fortune appears to smile upon the lot of the illegitimate who in times past was saddled with life's infirmities but could not always reap its benefits.

First, as to the standing of a posthumous child it is well-established, as enumerated and enunciated in La Blue v. Specker, 100 N.W.2d 445 (Mich. 1960), that an unborn child

---

[3]12.080 *Parent and guardian may maintain action for death, injury of minor child.* The father and mother jointly, or the father or the mother, without preference to either, may maintain an action for the death or injury of a minor child, when such injury or death is caused by the wrongful act or neglect of another; and a guardian may maintain an action for the injury or death of his ward, when such injury or death is caused by the wrongful act or neglect of another, the action by the guardian to be prosecuted for the benefit of the heirs of the ward. Any such action may be maintained against the person causing the injury or death, or, if such person be employed by another person who is responsible for his conduct, also against such other person.

[4]134.170 *Illegitimate child.*

1. Every illegitimate child shall be considered as an heir of the person who shall acknowledge himself to be the father of such child by signing in writing a declaration to that effect in the presence of one credible witness, who shall sign the declaration also as a witness, and shall in all cases be considered as heir of the mother, and shall inherit in whole or in part, as the case may be, in the same manner as if born in lawful wedlock. Illegitimate children shall be legitimatized by the intermarriage of the parents with each other. Children, so acknowledged or so legitimatized, shall have all the rights of inheritance of legitimate children.

2. The issue of all marriages, deemed null in law or dissolved by divorce, shall be legitimate.

is a "person" in those situations where remedies are given for personal injuries inflicted thus permitting the child after her birth to bring her own action against the alleged wrongdoer.[5] The court in *La Blue* held that an illegitimate child born after her putative father was killed in an automobile accident and who had been acknowledged by the father is a posthumous child entitled to support by that father, and when the means of support is wrongfully taken from the child a cause of action lies.

The question then becomes—is the legitimacy of the child a prerequisite to that right of action? In Levy v. Louisiana, 391 U.S. 68 (1968), the United States Supreme Court struck down a statute construed to deny wrongful death action by illegitimate children as creating an invidious discrimination which contravened the 14th Amendment's equal protection clause because legitimacy or illegitimacy of birth has no relation to the nature of the wrong allegedly inflicted. See also Glona v. American Guarantee & Liability Ins. Co., 391 U.S. 73 (1968).

The next roadblock to recovery is the statute requiring a written acknowledgment of paternity by the father. That impediment was resolved by Armijo v. Wesselius, 440 P.2d 471 (Wash. 1968), and Schmoll v. Creecy, 254 A.2d 525 (N.J. 1969). In the former, a baby girl was born illegitimate, her father had freely and publicly acknowledged his parentage of the impending child before his accidental death but he had not complied with the written acknowledgment of paternity requirements of the Washington statutes. Common-sense humanity, that court concluded, requires that the child of a decedent have a remedy for lost support, and further, that the "child or children" recited in the statute encompassed all natural or adopted children of the decedent who were dependent upon him regardless of their legitimacy. To the protest that such a holding would place decedents' estates at the mercy of unscrupulous charlatans posing as illegitimate children intending to reap undeserved benefits the court replied that upon those who would assert their right as a child of deceased would lie the burden of proof to establish their contention and "the burden was a heavy one."

Legitimacy or illegitimacy of birth has no relation to the nature of the wrong allegedly inflicted. Illegitimate children are

---

[5]The Legislature has provided in another connection that "Posthumous children are considered as living at the death of their parents." NRS 134.140.

humans and have their being. When the child's claim of damage for loss of his mother or father is in issue there is no sound reason why the tort feasor should go free merely because the child is illegitimate. Our paternity statute would create an open season on illegitimates in the area of automobile accidents by giving a windfall to tort feasors. *Glona,* supra, at 75. An obvious, possible extension of *Levy* and *Glona* would be to permit a recovery in a father-child relationship in which the identity of the father has been legally determined but the child has not been legitimatized.

An illegitimate child is subject to all the responsibilities of a citizen including the payment of taxes and conscription under the Selective Service Act. The illegitimate, after all, doesn't ask to be born. For the sole purpose of this wrongful death suit against the wrongdoers responsible for the loss of the father's obligation of financial support to the child, the "heirs" as provided in NRS 12.080 should include the illegitimate child whose identity has been established to the court regardless of the lack of a formal acknowledgment. In re Estate of Ross, 323 N.Y.S.2d 770 (N.Y.Sur.Ct. 1971).

For the purposes of NRS 12.080 this child is an "heir" entitled to bring a wrongful death suit but is adorned with that classification for the sole purpose of this action only and does not meet the requirements of the acknowledgment statute to permit it necessarily to participate in descent and distribution if its father has left an estate. Bower v. Landa, 78 Nev. 246, 253, 371 P.2d 657 (1962); cf. In re Hendrix Estate, 326 N.Y.S.2d 646 (N.Y.Sur.Ct. 1971).

Progressively, society is becoming more aware that children deserve proper care, comfort and protection even if they are illegitimate. The illegitimate child suffers serious pecuniary loss because the right of support from the deceased father is denied. Removing the obstacle of the acknowledgment statute and relegating it to its proper place within the legalities of inheritance of estates solves at the same time the invidious discrimination that would punish the child and inflict problems upon the community, consequences that arise solely from the father's inability to get to the marriage bureau before he was killed.

2. As noted, the statute recites that a guardian may maintain an action for the death of his ward to be prosecuted for the

benefit of the heirs of the ward. A guardian ad litem brought the action on behalf of the child but he was not the guardian of the deceased minor father. The primary concern is for the bereaved infant and the defect in not designating a guardian for the minor father to bring the action is·infinitesimal. *In re Estate of Ross,* supra, at 773.

3. The trial court erroneously excluded the testimony of William Goldson, driver of the truck, concerning the immediate details that led to the accident. The purpose of the Dead Man Statute was to prohibit fraudulent claims being made against the estate of the deceased. No one should have an unfair advantage over the deceased, but in this case it is not the estate of the deceased that is being attacked, rather representatives are suing in their own right for injuries to themselves against the live defendant. Matusik v. Large, 85 Nev. 202, 452 P.2d 457 (1969); see also C. Coker, Competency of a Defendant to Testify when Sued under the Wrongful Death Statute, 29 Miss.L.J. 258 (1958).

Further, at the time of trial NRS 48.010(1)(b) provided that when a representative of a deceased person, respondents here, produced testifying witnesses of their own "claiming to have been present when the transaction took place" then the other party could also testify. The eyewitness, Minister, being respondents' witness opened the door to allow Goldson's testimony on behalf of his employer. Carswell v. Greene, 116 S.E.2d 801 (N.C. 1960).

We conclude therefore that the testimony should have been admitted and its omission was error sufficiently important to cause reversal for a new trial.[6]

4. Because this matter may again result in recovery we will decide for guideline purposes the third point raised on appeal, that is, was it error to separate the judgments for purposes of allowing attorneys' fees to the parents?

Under current statute, NRS 18.010(3)(a), the court may make allowance for attorneys' fees if the prevailing party has not recovered in excess of $10,000. This court decided in *Wells, Inc. v. Shoemake,* supra, at 73, that a single lump sum

---

[6]NRS 48.010 to 48.320 were repealed effective July 1, 1971 by 1971 Nev. Stats., ch. 402. On remand, the trial court should utilize the new evidentiary statute. Staudter v. Elter, 166 A.2d 394 (N.J. 1960).

finding on damages suffered by heirs from wrongful death is the only proper method of assessing damages, and whether it is divided among them after recovery or how it is divided are matters of no concern to defendants. Yet, the statutory language pertaining to Nevada's Wrongful Death Act does not require the separate causes of action to be joined in one suit. While appellant claims that there is only one cause of action, NRS 12.080 allows the parents a cause of action for their loss. Walker v. Burkham, 63 Nev. 75, 83, 165 P.2d 161 (1946); Pardini v. City of Reno, 50 Nev. 392, 404, 263 P.2d 768 (1928); Armstrong v. Onufrock, 75 Nev. 342, 341 P.2d 105 (1959); cf. NRS 41.080 and NRS 41.090.

We agree that the trial court was correct in recognizing two separate claims.

Reversed and remanded.

MOWBRAY and GUNDERSON, JJ., concur.

THOMPSON, J., with whom BATJER, J., agrees, concurring in part and dissenting in part:

The majority properly orders another trial because of prejudicial error in precluding the eyewitness testimony of Goldson. NRS 48.010(1)(b). Otherwise, I do not agree with the opinion.

1. This is an action to recover damages for the wrongful death of a minor. The plaintiffs are the father and mother of the decedent and his alleged illegitimate daughter who was born after his death.[1] Death occurred in 1966. At that time NRS 12.080 gave only the father and mother a right of action for the death of their minor child. Perry v. Tonopah Mining Co., 13 F.2d 865 (D. Nev. 1915); L. A. & S. L. R. Co. v. Umbaugh, 61 Nev. 214, 123 P.2d 224 (1942). And, of course, NRS 12.090, as it then read, granted a cause of action to heirs of a person not a minor. The statutory scheme then effective simply did not grant a right of action to a minor child for the death of her minor parent. Since the cause of action for wrongful death is created and circumscribed by statute, we necessarily are confined to the statutory authorization. Wells, Inc. v. Shoemake, 64 Nev. 57, 177 P.2d 451 (1947). That portion of NRS 12.080 utilized by the majority granting "a guardian the right to maintain an action for the injury or death of his ward," has

---

[1] I agree with the majority that a child conceived, but not yet born, should be deemed an existing person for the purposes of a wrongful death action in the event of its subsequent birth. La Blue v. Specker, 100 N.W.2d 445 (Mich. 1960).

nothing whatever to do with this case since the decedent was not the ward of anyone.

Even if the decedent was of age when accidentally killed (he was not) the illegitimate child would not qualify as his heir invested with a right of action for wrongful death under NRS 12.090. An heir is one entitled to inherit the estate of the decedent under our law of succession. Bower v. Landa, 78 Nev. 246, 371 P.2d 657 (1962). Before an illegitimate child may be considered an heir of an alleged male parent, that parent must either have given his written acknowledgment of paternity or subsequently have married the child's mother. NRS 134.170.[2] Neither event happened in this case. A cause of action for wrongful death is not given to the illegitimate child in the narrow circumstances before us. The majority has judicially created a cause of action where none existed either at common law or by statute.

2. Today's opinion stresses the need to treat legitimate and illegitimate children equally—a proposition with which I fully agree. To do otherwise is invidious discrimination against a class in violation of the Equal Protection Clause of the Federal Constitution. Levy v. Louisiana, 391 U.S. 68 (1968); Glona v. American Guarantee Co., 391 U.S. 73 (1968); Schmoll v. Creecy, 254 A.2d 525 (N.J. 1969). However, that doctrine does not become operative until it is legally established that the deceased male is in fact the father of the illegitimate child. In Nevada, the relationship of parent and illegitimate child may be established judicially pursuant to NRS ch. 126, the Uniform Illegitimacy Act, pursuant to NRS 41.530, or by the father's written acknowledgment of paternity in accordance with NRS

[2]NRS 134.170: "Every illegitimate child shall be considered as an heir of the person who shall acknowledge himself to be the father of such child by signing in writing a declaration to that effect in the presence of one credible witness, who shall sign the declaration also as a witness, and shall in all cases be considered as heir of the mother, and shall inherit in whole or in part, as the case may be, in the same manner as if born in lawful wedlock. Illegitimate children shall be legitimatized by the intermarriage of the parents with each other. Children, so acknowledged or so legitimatized shall have all the rights of inheritance of legitimate children."

See also:

NRS 122.140: "Illegitimate children shall become legitimatized by the subsequent marriage of their parents with each other."

Smith v. Gabrielli, 80 Nev. 390, 395 P.2d 325 (1964), where summary judgment was granted to the putative father who had paid hospital and medical expenses incident to the birth of an illegitimate child, but who had not acknowledged paternity in writing.

134.170. When the relationship is established in this manner the illegitimate child becomes entitled to treatment equal to that afforded a legitimate child.

I do not read the United States Supreme Court cases cited by the majority to mean that a State may not prescribe how the relationship of the putative father and illegitimate child is to be established. When the status of mother and child is involved, as in *Levy,* supra, and *Glona,* supra, their relationship is easily established. Proof of maternity does not give rise to the same problems that proof of paternity spawns. In the case of a male decedent charged with parenthood there is a legitimate fear of spurious claims against which the tort-feasor is unable to defend. For this reason, and others, our legislature has prescribed how paternity is to be established. When the legislative direction is not met, the claims of an illegitimate child to the benefits of paternity are not cognizable.

Therefore, I conclude that the child does not possess a cause of action for the wrongful death of James E. Mounter. The jury verdict and judgment for her should be set aside and the new trial should be limited to the claims of the parents of the decedent.