DAVID M. HOGLE, M.D., INDIVIDUALLY; AND MANILLA, CORTEZ, HOGLE, YOUNG, LTD., A NEVADA CORPORATION, DBA ELKO REGIONAL MEDICAL CENTER, APPELLANTS, *v.* BRYCE MICHAEL HALL, A MINOR, BY AND THROUGH CAROL EVANS, GUARDIAN AD LITEM, RICHARD A. HALL, INDIVIDUALLY, AND KIM MARIE HALL, RESPONDENTS.

No. 27299

May 10, 1996 916 P.2d 814

*Beckley, Singleton, Jemison & List* and *Daniel F. Polsenberg,* Las Vegas; *Osborne* and *Gamboa,* Reno, for Appellants.

*White & Meany,* Reno; *Puccinelli & Puccinelli,* Elko, for Respondents.

## OPINION

*Per Curiam:*

The minor child Bryce Michael Hall (Bryce) was born profoundly retarded because his mother took the prescribed drug Accutane for her acne during the early stages of pregnancy. The appellants were found negligent, and damages were awarded to Bryce. The appellants now claim that numerous errors occurred in this case, including that the district court permitted new guardians ad litem to be named as party plaintiffs on behalf of Bryce prior to trial and assessed an additur of $300,000.00 to Bryce's damages, along with the assessment of attorney's fees subsequent to trial. We conclude that all of appellants' contentions are without merit, and we affirm the judgment entered in district court.

### FACTS

Kim Hall, a twenty-seven-year-old resident of Elko, had been troubled by acne since she was a teenager. In 1986, Kim's acne had been successfully treated with Accutane by a dermatologist in Idaho. Accutane is a prescription drug which is recommended for treating "severe recalcitrant cystic acne." Accutane is also

extremely teratogenic (birth-defect causing). In fact, at one point, the FDA considered taking Accutane off the market because of the large number of birth defects it caused. Instead, the FDA consulted with physicians and Roche, the manufacturer of the drug, and came up with guidelines for prescribing Accutane. These guidelines appear in the Physician's Desk Reference and consist of six conditions which must be met by the patient before the physician prescribes Accutane. According to the guidelines, the patient must: (1) have severe disfiguring cystic acne which has not responded to other therapies; (2) be reliable in understanding and carrying out instructions; (3) be capable of complying with mandatory contraceptive measures; (4) receive oral and written warnings of the teratogenic properties of Accutane and acknowledge understanding of these warnings in writing; (5) have a negative serum pregnancy test within two weeks prior to beginning Accutane; and (6) begin Accutane only on the second or third day of the next normal menstrual period. It is further recommended that effective birth control be used for one month before beginning Accutane and that birth control be continued until one month after the conclusion of the Accutane therapy.

On January 8, 1991, Kim went to Dr. David Hogle (Hogle) for treatment of her acne. Kim told Hogle that her last menstrual period had been that month. Hogle gave Kim a prescription for Accutane without following the checklist contained in the PDR. He did not give Kim written warnings or have her sign a written acknowledgment that she understood the risks. Kim was unknowingly pregnant on January 8, 1991, as her last menstrual period had actually been December 21, 1990. Bryce was born on September 3, 1991, with severe birth defects as a result of Kim's ingestion of Accutane. Bryce is profoundly retarded, his pupils do not respond to light, and he has virtually no ability to suck, swallow or move his tongue or lower facial muscles. It is estimated that he may survive to ten or fifteen years of age.

A complaint of medical malpractice was submitted to the Northern Nevada Medical-Legal Screening Panel, and on March 1, 1994, the Screening Panel returned a finding that there was a reasonable probability of medical malpractice by Hogle and that Bryce was injured by such malpractice.

In March 1994, Richard Hall filed the initial complaint on behalf of his son, Bryce, as his parent and natural guardian for damages sustained by Bryce. Hogle and Elko Regional Medical Center (ERMC) were named as defendants. Richard subsequently amended the complaint to add one claim of relief asserting damages on his own behalf for loss of consortium, care and companionship of Bryce. The appellants answered the complaint and filed a third-party complaint against Bryce's mother, Kim

Hall, claiming that Kim's negligence proximately caused damage to Bryce and asking for contribution and costs to the extent of her negligence. Prior to trial, the complaint filed by Richard Hall on behalf of Bryce was amended a second time to allege that Bryce's grandmother, Carol Evans, had been appointed guardian and guardian ad litem of Bryce for purposes of prosecuting this action and First Interstate Bank of Nevada had been appointed co-guardian for the purpose of handling any monies found due and owing Bryce. The caption was changed to reflect that the action was now being asserted by the co-guardians Evans and First Interstate Bank and Richard Hall individually. At no time did Kim Hall ever make a claim for recovery on behalf of Bryce or claim any damages flowing from Bryce's personal injuries.

On August 12, 1994, a settlement conference was held pursuant to NRS 41A.059. The judge assigned to evaluate the settlement value of the case found the settlement value to be $2,613,000.00.

Before the trial commenced, the district court entered a pretrial order which dealt with several motions in limine. The district court ruled:

> The parties and their witnesses may not refer to, comment on, or attempt directly or indirectly to suggest to the jury in any manner, that Counterdefendant KIM MARIE HALL has ever used illegal or "street" drugs at any time; that she has ever been the victim of spousal abuse or domestic violence; that she has ever abused the use of alcohol, and any related matters designed to put KIM MARIE HALL in a "bad light."

There was also evidence that Kim had attempted suicide in January 1990, but this was not excluded by the pretrial order. The court further ruled that because Kim had no duty to have an abortion when she found out she was pregnant, the testimony as to abortion would be very limited. The purpose of this order was apparently to prevent the jury from finding that Kim was negligent by failing to abort Bryce.

A six-day jury trial was held, beginning on January 18, 1995. The jury returned a verdict in favor of Bryce in the amount of $2,630,000.00, finding Hogle sixty percent negligent and Kim forty percent negligent. The district court entered judgment which held Hogle and ERMC jointly and severally liable. The judgment also specified that Hogle and ERMC could recover forty percent of the judgment from Kim.

On March 25, 1995, Bryce moved the court for additur, arguing that the jury apparently did not award general damages, i.e., pain and suffering. Instead, the damages correlated almost

exactly to past and future medical damages, and so were only special damages. As an alternative to additur, Bryce asked for a new trial limited to the issue of damages. Additionally, Richard requested additur, since the jury had found that he had been damaged by his son's injuries, but had chosen to award him nothing.

In his opposition to the motion for additur, Hogle argued that even if the verdict was inadequate, it was the result of a compromise between the issues of liability and damages. Hogle argued that the jury may have felt that Kim's conduct was a superseding cause and the jury then compromised and awarded Bryce only his medical damages and no pain and suffering damages. Hogle urged that the only proper remedy was to award a new trial.

The district court granted Bryce's motion for additur, specifically rejecting Hogle's notion of a compromise verdict. The court noted:

> The jury specifically found that Ms. Hall's negligence *and* Dr. Hogle's negligence were contributing causes of the injuries suffered by Bryce in the instant case. Moreover, the jury calculated the degree to which Dr. Hogle and Ms. Hall were at fault herein. The jury has already resolved the issues of negligence and causation; therefore the Court need not indulge Defendants' elaborate "compromise verdict theory" and concomitant request for a complete new trial herein.

On April 10, 1995, Hogle moved for relief from judgment under NRCP 60(b)(2).[1] The thrust of Hogle's argument was that the action for medical expenses belonged to the community of Richard and Kim and that substituting Evans as guardian ad litem effected a fraudulent transfer under NRS 112.190.[2] Hogle requested that the "transfer" be set aside and the judgment for medical damages be reduced by the forty percent for which the community was liable because of Kim's negligence.

In an order filed June 5, 1995, the district court denied Hogle's motion. The court noted that a parent has a right to pursue a

---

[1]NRCP 60(b)(2) provides that the court may relieve a party from a judgment for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party which would have theretofore justified a court in sustaining a collateral attack upon the judgment."

[2]NRS 112.190(1) provides that:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

claim for medical expenses incurred to care for an injured minor child. The court further noted that the child has his own right of action to damages and that this right is either subordinate or concomitant to a parent's right to bring an action. The court concluded that Kim and Richard had "waived" their right of action "in order 'to entitle [Bryce] to recover the full amount of his damages.' " In the view of the district court, such waiver did not constitute a "transfer" as prohibited by NRS 112.190. Further, the court found that even if there was a transfer, there was no evidence that it was "fraudulent."

On March 27, 1995, Bryce moved for an award of attorney's fees. The motion was made pursuant to NRS 41A.059(4), which provides that after the judge at the settlement conference has determined the value of a medical malpractice claim, "[i]f the defendant rejects the determination and the plaintiff is awarded an amount greater than the amount of the determination, the plaintiff must be awarded reasonable costs and attorney's fees incurred after the date of the rejection." The motion was accordingly based on the defendants' rejection of the amount set by the judge at the settlement conference. That amount ($2,613,000.00) was less than what the jury finally awarded ($2,630,000.00); thus, Bryce argued that defendants were liable pursuant to NRS 41A.059(4) for attorney's fees incurred after the rejection.

In his opposition to the motion for attorney's fees, Hogle argued that if the judgment were reduced because of the "fraudulent transfer" of the claim from Kim and Richard to Evans, then it would be less than the amount set at the settlement conference and attorney's fees would not be appropriate. The district court rejected this argument and awarded attorney's fees pursuant to NRS 41A.059(4).

On July 3, 1995, the district court entered a "Supplemental Judgment," which awarded Bryce attorney's fees and $300,000.00 for pain and suffering in the form of additur. The judgment further stated that Hogle and ERMC could recover forty percent of these pain and suffering damages from Kim.

## DISCUSSION

Hogle and ERMC appeal, arguing that: (1) the substitution of Evans as guardian ad litem was an assignment of the claim from Kim and Richard to Evans and constituted a fraudulent transfer; (2) the district court erred by altering a pretrial order without making appropriate findings; (3) the district court abused its discretion by allowing evidence of Kim's attempted suicide without allowing evidence of the surrounding circumstances; (4) the district court should have granted a new trial on all issues; and (5) an offset or set-aside for the fraudulent transfer would reduce the

judgment to less than the settlement value, making the award of attorney's fees improper.

Hogle and ERMC argue that a claim for medical expenses belongs to the parents of the injured child. Hogle and ERMC further argue that had Kim and Richard brought the action instead of "transferring" the action to Bryce (through his guardian ad litem), the judgment would have been offset by Kim's negligence. Hogle and ERMC therefore request that the judgment be reduced by forty percent to reflect Kim's percentage of the liability.

An unborn child who sustains injury prior to birth may sue for those personal injuries after being born. Weaks v. Mounter, 88 Nev. 118, 493 P.2d 1307 (1972). While NRS 12.080 permits a mother or father to bring suit for injuries sustained by their minor child, the right to sue for those damages belongs to the minor unless the parent has paid the expenses for the minor or incurred them him or herself. *See* Armstrong v. Onufrock, 75 Nev. 342, 347, 341 P.2d 105, 107 (1959).

> While sec. 8553, N.C.L. 1929, (the predecessor to NRS 12.080) gives the parents a right of action for the tortious injury of their minor child, there is nothing in that section which warrants the conclusion that it was the intention of the legislature to deprive the infant of his common law right to sue for damages for such injury, though the elements of the damages recoverable by him may be limited to such items as pain, suffering, disfigurement and the like. In a suit by the parents, they would be entitled to recover only such damages as may have been sustained by them, such as their loss of the child's services and earnings and the medical expenses incurred by them in effecting a cure. (Citation omitted.)

Walker v. Burkham, 63 Nev. 75, 83, 165 P.2d 161, 164 (1946). Therefore, a minor who sustains personal injuries may bring suit either through his parents pursuant to NRS 12.080 or through a guardian ad litem appointed by the court.

This court has held that the negligence of a parent cannot be imputed to an innocent child, and the proper remedy is for all tortfeasors to be held jointly and severally liable. Buck v. Greyhound, 105 Nev. 756, 764, 783 P.2d 437, 442 (1989). Hogle and ERMC seek to avoid this result by arguing that the claim was fraudulently transferred and so offset is appropriate. Kim's comparative negligence would not be imputed to Bryce even if she was the parent who asserted Bryce's cause of action. In permitting the complaint to be amended to reflect Evans and First Interstate Bank as the new guardians pursuing the action for

Bryce, the district court did nothing more than recognize the change of the individual and entity responsible for Bryce's action. This was in no sense a fraudulent transfer, and the appellants' argument is without merit.

Hogle and ERMC next argue that the district court improperly modified its pretrial order. Recognizing that Kim had no duty to have an abortion, the district court entered a pretrial order which provided, in part:

> The parties and their witnesses may only refer to abortion in a very limited manner, through testimony which concerns only the standard of care of the defendant, DAVID M. HOGLE, M.D., and the advice he may or may not have given to KIM HALL concerning an abortion if she became pregnant while taking the drug Accutane.

Hogle testified twice, once during the plaintiff's case and again during the defendants' case. During redirect on the second day of Hogle's testimony, the following exchange took place:

> Q: Are there any things that a patient would say, an Accutane patient would say, that would absolutely put you in a position where you wouldn't give them the drug?
> A: If we discussed abortion and—
> MR. WHITE [counsel for Bryce]: Objection, Your Honor.
> MR. PUCCINELLI [counsel for Kim]: Objection.
> MR. OSBORNE [counsel for Hogle]: Why?
> THE COURT: Sidebar.
> (WHEREUPON the following proceedings were had at the bench)
> MR. WHITE: Your Honor, I think that Mr. Osborne on three other occasions has definitely crossed the line on this particular question. He is eliciting testimony that is repetitive, is repetitive, is repetitive. We have heard it before from this witness, we have heard it from other witnesses, we have heard it come in. It should be excluded just on the basis of repetition alone.

The district court judge then sustained the objection, stating, "We have all the information that is necessary for the jury regarding standard of care and abortion. I am not going to allow any more questioning about that." Hogle and ERMC argue that Hogle was thereby precluded from showing that he would not have prescribed Accutane unless Kim agreed to consider an abortion in the event she became pregnant.

Hogle and ERMC argue that this ruling by the district court constitutes a modification of the pretrial order. We conclude that

it is clear from the record that the testimony was excluded on the grounds that it was cumulative and not because of some modification of the pretrial order. Indeed, the testimony of Hogle that was excluded *was* cumulative. The notes made by Hogle during his consultation with Kim were entered into evidence and presented to the jury several times. These notes indicated that Kim had agreed to consider an abortion if she should get pregnant while taking Accutane. We therefore conclude that the proposed evidence was properly disallowed by the district court as being cumulative and that Hogle and ERMC's argument that the district court's ruling was a modification of the pretrial order is without merit.

During the plaintiff's case/in/chief, Dr. Tom McAfee testified as an expert witness. McAfee is a board-certified internist. During direct examination of McAfee by Bryce's attorney, the following exchange took place:

> Q: Doctor, I want you to assume that a female patient who had attempted suicide less than a year before and who told you that she had gone off birth control pills comes into your office and says, "Dr. McAfee, I want you to prescribe me this miracle drug Accutane." What do you do in this situation?
> MR. OSBORNE: That is not the question, what he would do. The question is what is the standard.
> THE COURT: That's correct.
> Q: (By Mr. White) What is the standard in that situation?
> A: The standard of care is—as described in the P.D.R.—is to use this drug, but follow certain guidelines. One of the guidelines is to make sure that it's a reliable patient. So in the hypothetical case that you are describing, I would have— a real red flag would go up in my mind as to whether this was a reliable patient.

Hogle and ERMC argue on appeal that because of the district court's order that there could be no testimony that Kim had used drugs or had been the victim of domestic violence, "defense counsel was denied an opportunity to effectively cross-examine Dr. McAfee. Cross-examination would have demonstrated that Kim Hall's 'attempted suicide' actually consisted of an overdose of pain medication (Darvon) and that she was in a very unfortunate life situation at the time."

However, Hogle was able to testify that Kim's "life was different. The suicide event was behind her." Hogle was able to so testify without specifically mentioning drugs and domestic violence. Hogle further testified that he disagreed "that because

someone once committed suicide—or tried to commit suicide, that they are unstable or incapable of following instructions.''

Hogle and ERMC argue that ''the proper exercise of discretion would have been to . . . exclude the suicide attempt along with all the surrounding circumstances.'' However, Hogle and ERMC fail to show how the granting of the pretrial order was an abuse of discretion. Even assuming arguendo that it was an abuse of discretion, we conclude that such error was harmless, since Hogle was able to testify, within the constraints of the pretrial order, that Kim's life had changed and he felt she was reliable.

Hogle and ERMC next argue that the district court should have ordered a new trial, rather than granting additur. ''[A]dditur is a just, speedy, efficient, and inexpensive vehicle to correct an inadequate jury verdict.'' Drummond v. Mid-West Growers, 91 Nev. 698, 712 n.8, 542 P.2d 198, 207 n.8 (1975). Further, this court has held that an award of no damages for pain and suffering may be inadequate. Arnold v. Mt. Wheeler Power, 101 Nev. 612, 614, 707 P.2d 1137, 1139 (1985). Hogle and ERMC argue that instead of granting the motion for additur, the district court should have ordered a new trial as to both liability and damages. In support of this argument, Hogle and ERMC cite Shere v. Davis, 95 Nev. at 491, 596 P.2d 499 (1979). In *Shere,* this court held that where there is an interrelationship of liability and damage issues it is inappropriate to grant either additur or a new trial limited to damages. *Id.* at 493, 596 P.2d at 500. However, *Shere* can be distinguished from the instant case. In *Shere,* the respondent suffered various injuries in a car accident. Some evidence suggested that a back injury of which respondent complained was not caused by the accident. There was clearly an interrelationship between liability and damages because if the back injury was not caused by the accident, then the damages would be decreased. It was appropriate for the district court in that case to hold a new trial as to liability and damages.

In the instant case, however, Hogle admitted that all the injuries suffered by Bryce were caused by Kim's use of Accutane. There was not, therefore, an interrelationship between liability and damages. Further, the jury was very clear as to Hogle's comparative fault, assigning him sixty percent of the liability.

Hogle and ERMC try, once again, to assert that the verdict was the result of some improper compromise on the part of the jury, but they offer no evidence that this is the case. Accordingly, we conclude that it was not error for the district court to grant additur rather than order a new trial as to both liability and damages.

Attorney's fees were awarded by the district court pursuant to

NRS 41A.059(4), which provides that after the judge at the settlement conference has determined the value of a medical malpractice claim, "[i]f the defendant rejects the determination and the plaintiff is awarded an amount greater than the amount of the determination, the plaintiff must be awarded reasonable costs and attorney's fees incurred after the date of the rejection."

Hogle and ERMC argue that after offset of Kim's comparative fault (forty percent) for "fraudulent transfer," the resulting judgment would be less than the amount assigned to the case by the settlement judge and attorney's fees should not be allowed. This argument must fail since we have concluded that the judgment should not be offset.

For the foregoing reasons, we conclude that all of Hogle and ERMC's arguments are without merit.[3] Accordingly, we affirm the judgment of the district court.[4]

YOUNG, SHEARING, and ROSE, JJ., and Gibbons, D. J., concur.

---

[3]The Honorable Bob Miller, Governor, designated The Honorable Michael P. Gibbons, District Judge of the Ninth Judicial District, to sit in this case in place of THE HONORABLE THOMAS L. STEFFEN, Chief Justice, who voluntarily disqualified himself. Nev. Const., art. 6, § 4.

[4]THE HONORABLE CHARLES E. SPRINGER, Justice, did not participate in the decision of this appeal.